WALLACE & SONS, Appellants, *v.* FREDERICK WALSH *et al.,* Respondents.

*Court of Appeals, Dec.,* 1890.

Aff'g 52 Hun, 328.

1. *Manufacturing companies. Annual Report.*—Where, though the certificate of incorporation of a manufacturing company provides that the number of trustees to manage the concerns of the company for the first year shall consist of twelve, the number has been reduced by a resolution of the board of trustees, who had power under the by-laws to do so, but which has not been certified to the county clerk and secretary of state, and for the subsequent year the stockholders have elected but nine trustees, six of whom signed the annual report, which was duly filed, such proceedings, concurred in by every one having an interest in the corporation or its affairs, effected a practical reduction of the number of its trustees and constituted the nine thereafter elected a *de jure* as well as a *de facto* board, entitled to act for the corporation in transacting its business, until some party whose interests are affected, shall raise the question, in a direct proceeding to question the exercise of such authority; such action cannot, collaterally, be assailed and tried in a proceeding, wherein the question is only incidentally involved.

2. *Same.*—When a board of trustees, in fact authorized by the corporation and having possession of its property and franchises, and undisputed control in the management of its affairs, has filed and published, within the time limited, the report required by the statute, certified by a majority of such board and verified by its president, it has complied with the letter and spirit of the law, and it is not competent, in proceedings against the trustees for a failure to file an annual report, for the creditor to show, with a view of creating a penalty or forfeiture, that some of the acting trustees were not duly elected or, for some reason, were disqualified from acting as such trustees, or to claim, by reason of a non-performance, or an irregularity in the performance, of some duty enjoined upon the stockholders, that an acting board of trustees was not in fact a board authorized to perform the general duties required of them as agents of the corporation.

3. *Same.*—The words "majority of its trustees," in § 12, chap. 40 of 1848, do not mean a majority of a constructive, but a majority of an existing, board.

See note at end of case.

*Geo. S. Hastings*, for appellants.

*Edwin Nottingham*, for respondents.

RUGER, Ch. J.—This action was brought against the defendants, as trustees of the "Syracuse Stove Company," to recover an indebtedness owing to the plaintiff by that corporation, upon the ground that such trustees had become personally liable therefor by reason of their neglect to make and publish the annual reports for the years 1887 and 1888 of the financial condition of the corporation as required by statute. Section 12, chap. 40, Laws of 1848. The company was incorporated under the law of 1848 as a manufacturing corporation, and the language of the statute imposing the duty of making reports, so far as it affects this case, reads as follows: "Every such company shall within twenty days from the 1st day of January" in each year, "make a report which shall be published in some newspaper, etc., * * * which shall state the amount of capital, and of the proportion actually paid in, and of the amount of its existing debts, which report shall be signed by the president and a majority of the trustees," and shall be verified, filed, etc., "and if any of said companies shall fail so to do, all the trustees of the company shall be jointly and severally liable for all the debts of the company then existing, and for all that shall be contracted before such report shall be made."

It is not disputed but that in each of the years named a report was made, filed, and published in good faith by the company, which truthfully and accurately stated each of the several facts required to be incorporated in such report, and that such report was signed and verified by the president and a majority of the acting board of trustees of such company. That board, as actually constituted at the time of making these reports, and for several years prior thereto, consisted of nine members, and six of such trustees united in making these reports.

It thus appears that the reports were made and verified

exactly in accordance with the requirements of the statute, and the company must be held to have duly executed the duty imposed upon it, unless, for some ulterior reason, it shall be adjudged not to have done so. It is claimed by the plaintiff that the requirements of the statute were not complied with because such reports were not signed by a majority of the trustees whom the company was authorized to elect under its charter, and that the trustees signing did not constitute a majority of such theoretical number. The certificate of incorporation provided that the number of trustees to manage the concerns of the company, for the first year, should consist of twelve, but since the year 1885 the stockholders had, in fact, elected but nine trustees. The number signing the reports was six, and because six is not a majority of twelve it is claimed that the trustees became liable for the debts of the corporation, as a penalty for an omission by the company to make reports.

The undisputed evidence in the case shows that the Wolfe Stove Manufacturing Company was incorporated on the 3d day of February, 1883, under chap. 40 of the Laws of 1848, and on the 28th day of March, 1885, its corporate name was duly changed, by an order of the supreme court, to the Syracuse Stove Company ; that upon the organization of the original company certain by-laws were adopted, among which was one providing that, " the number of its trustees should be twelve, who shall, respectively, be stockholders in the company," and another authorizing its trustees to alter and amend its by-laws at their discretion ; and that on January 28, 1885, the by-laws were duly amended by a resolution of the board of trustees reducing the number of trustees from twelve to nine. But it is claimed that because a certificate of the fact of such reduction was not filed in the office of the county clerk and secretary of state, as provided by chap. 269 of the Laws of 1860, as amended by chap. 316 of the Laws of 1878, the act of the company in reducing the number of trustees was ineffective for any

purpose. That the company had the power, under the statute, to determine absolutely the number of trustees who should constitute its board within the limits of not less than three or more than thirteen, is not controverted; or, but that if it had determined, and legally manifested its determination, to have but three trustees, it could lawfully have done so. After such reduction was attempted to be made no more than nine trustees were ever elected by the stockholders, and the business of such corporation was thereafter conducted by a board composed of that number, during the years 1885, 1886, 1887 and 1888, and no question was at any time thereafter raised as to their right to exercise the powers of a regular board of trustees. The trustees were empowered by the by-laws of the corporation to appoint to any vacancies which should occur in their board; but the right to elect trustees was vested exclusively in the stockholders. Whether an omission by the stockholders at an annual meeting to elect a full board, under any circumstances, would create a vacancy which might be supplied by the trustees, under the by-laws, is a matter of some doubt, but in case where the board itself is constituted under a declaration on the part of both stockholders and trustees that a full board should consist of nine members only, and nine are elected, we think it would be a clear case of usurpation for a board so constituted to declare the existence of vacancies, and of its own motion appoint additional trustees to fill such vacancies. It cannot, we think, be doubted, but that the proceedings referred to, concurred in by every one having an interest in the corporation or its affairs, effected a practical reduction of the number of its trustees and constituted the nine thereafter elected, a *de jure* as well as a *de facto* board, entitled to act for the corporation in transacting its business until some party whose interests were affected should raise the question in a direct proceeding to question the exercise of such authority. People *v.* N. Y. & M. B. R. Co., 84 N. Y.

566. Neither the company nor its trustees or stockholders could have been heard to allege, in a collateral proceeding, the invalidity of their action in reducing such board ; or its want of authority to administer the general affairs of the corporation. Whatever might have been the effect upon the corporation of a direct proceeding by the attorney-general, or otherwise, to test the legality of their action in reducing such number, or of doing business with an insufficient or defective board, we think such action could not, collaterally, be assailed and tried in a proceeding wherein the question was only incidentally involved.

So far as the plaintiff and the public were concerned, the whole object and purpose of the statute was accomplished by the reports published, and no one has been injured or aggrieved either by what has heretofore been done or omitted by the corporation. The purpose of the provisions of the statute is to inform the public and those interested in the affairs of the company of its financial standing and condition from time to time, Quarry Co. *v.* Bliss, 27 N. Y. 297 ; Garrison *v.* Howe, 17 Id. 465, and when such information has been published in good faith in the manner and form pointed out by the statute, the trustees have done all that was in their power to comply with the provisions of the statute and to avoid the incurrence of a penalty for the non-performance of the duty imposed. When a board of trustees, in fact authorized by the corporation and having possession of its property and franchises, and undisputed control in the management of its affairs, has filed and published, within the time limited, the report required by the statute, certified by a majority of such board and verified by its president, it has, we think, complied with the letter and spirit of the law. It is not competent, we think, in such proceedings as this, for the creditors to show, with a view of creating a penalty or forfeiture, that some of the acting trustees were not duly elected or, for some reason, were disqualified from acting as such trustees, or to claim, by reason

of a non-performance or an irregularity in the performance of some prior duty enjoined upon stockholders, that an acting board of trustees was not in fact a board authorized to perform the general duties required of them as agents of the corporation. The immediate effect of the plaintiffs' contention is to procure the judgment of the court that since. the year 1885 the corporation has not possessed a legal board of trustees, and that the management of its affairs for the succeeding period has been conducted in violation of the provisions of its charter and without authority of law. The direct effect of such an adjudication would necessarily be not only to declare its existence illegal and subject it to a forfeiture of its franchises, but to expose its contracts and enterprises to the taint of illegality. Certainly the plaintiffs have no right to ask for such an adjudication in any direct proceeding, and, we think, they cannot accomplish the same object indirectly.

It was said in Denike *et al. v.* N. Y. & R. Lime, etc., Co., 84 N. Y. 605, that "a corporation owes its life to the sovereign power, and under what circumstances it shall forfeit or be deprived of that life depends upon the same power. A corporation may be dissolved by forfeiture through abuse or neglect of its franchises, but such forfeiture, unless there be special provisions by statute, can only be enforced by the sovereign in some proceeding instituted in its behalf." And in Matter of N. Y. El. R. R. Co., 70 N. Y. 338, it was said that "a cause of forfeiture cannot be taken advantage of or enforced against a corporation collaterally or incidentally, or in any other mode than by a direct proceeding for that purpose against the corporation, and the government creating the corporation can alone institute the proceeding, and it can waive a forfeiture." We think this proceeding comes within the spirit and meaning of the rule referred to, and should be governed by the principle applying to such cases.

We also think the action of the plaintiffs must fail for

the reason that their argument requires the court to supply, by construction, language to a statute which does not, by its terms, cover the case presented by them. The plaintiffs' construction of § 12 of the Act of 1848 clearly requires that we should hold that a majority of its trustees must consist of a majority of a constructive board and not a majority of an existing board. This contention requires language to be supplied to the statute which shall extend its effect beyond the literal meaning of the terms employed, and is contrary to the well settled rules on the subject. The courts have uniformly refused to extend a penal act beyond the strict letter of the statute in order to bring a case within its meaning which was not clearly embraced in its letter. Garrison *v.* Howe, 17 N. Y. 465. The contention of the appellants here is founded upon the purest technicality and may in justice be met by an equally technical answer. When a party has been injured by a wrongful or unauthorized exercise of power, either by the constituent elements or the executive board of a corporation, undoubtedly the law will supply, in some way, redress for the wrong inflicted; but it cannot be lawful or just to make one party responsible for the debts of another through a loose construction of a statute imposing a penalty for an omission to perform an act which has, in fact, been performed and its purpose effectually accomplished. Under such circumstances the case is not within the spirit of the act, and under well settled rules, must be held to be without its meaning.

The appellants have cited a number of cases arising in England and also in this state in support of their contention, but we have been unable to find among them any that can be deemed authority upon the question under consideration. The several English cases of Rex *v.* Varlo, 1 Cowp. 248; Rex *v.* Bellringer, 4 Durn. & East, 810; Rex *v.* Miller, 6 Id. 268; Bailiffs *v.* Phillips, 4 Adol. & Ellis, 550, were similar to each other in character and determined by the same general considerations. They each involved the

powers of municipal corporations created by grants from the crown or parliament in the exercise of their political jurisdiction and the authority of the municipal administration in appointments to office, the election of members of parliament and the performance of similar duties. The questions arose in direct proceedings by *quo warranto* to test the authority of certain officers to exercise the duties of their offices who claimed to have been appointed by the municipal authorities. The power of appointment in these cases was given to the mayor and a majority of a definite number of burgesses, and the mayor and burgesses were given authority in case of vacancies occurring in the number of burgesses to fill them by election or appointment. It was held that the municipal authorities could not lawfully make such appointments through the concurrence of a less number than a majority of the whole number of burgesses, when by the neglect of the municipal authorities to fill vacancies they had permitted that body to become reduced in number so that a majority of the whole could not be obtained to meet for corporate action.

It is manifest that no analogy exists between the action of a body of men invested with the exercise of political power under special conditions and the action of the trustees of a private corporation in the conduct of its business operations. The one relates to the execution of powers and the other to the performance of duties and the enjoyment of privileges. The one is controlled by the principles governing the relations of principal and agent and the other to the general rules regulating the consequences following a neglect or disobedience of the requirements of statutes affecting private relations. In the one case the questions as to what is a good execution of a power is involved and in the other as to what may be considered an adequate performance of a duty. These questions are manifestly controlled by different rules, and that which is required in one is not an authority for the requirements of the other. " The

extent of a power, like the extent of an agency created by written power of attorney must be sought for in the instrument conferring the power and authority not found there does not exist." Hetzel *v.* Barber, 69 N. Y. 13.

The cases cited in this state are, for similar reasons, equally foreign to the questions involved. The People *ex rel.* Hawes *v.* Walker, 23 Barb. 304, was an action by the people to test the right of the defendant to the office of commissioner of jurors in New York. The power of appointment was given to certain defined officers in the city of New York, and the question was whether such officers had legally executed their power of appointment.

The case of *Ex parte* Willcocks, 7 Cowen, 402, was a proceeding under a special statute, on behalf of persons claiming the offices, to test the right of certain other persons to hold the office of directors of the Utica Insurance Co.

Moore *v.* Rector of St. Thomas', 4 Abb. N. C. 51, was the foreclosure of a mortgage alleged to have been given by a religious corporation upon its property, and the corporation set up as a defense that it was not executed by those having authority under the statute to bind the corporation.

The question in all these cases was as to the proper execution of powers, and it was presented in proceedings instituted for the purpose of testing the validity of the performance of the powers conferred by persons expressly authorized by law to institute the proceedings.

We have found no authority holding that persons having no interest in the question litigated can bring suit to review corporate action with a view of determining whether such action has at all times been in conformity with the rules of law governing such bodies. It is contrary to the general rules of practice for courts to permit parties to institute actions and drag other parties into litigation upon questions in which the plaintiffs have no interest or concern. It was entirely immaterial to the plaintiffs here whether the corporation did business with three or thirteen trustees, or

whether they were, each and all, legally elected or not. It was enough for them to know that the duty which they were interested in having performed had been actually performed by a board of trustees, duly elected under the by-laws, and having the actual management and control of the corporation with which the plaintiffs had contracted.

In accordance with these views the order of the general term should be affirmed and judgment absolute for the defendants dismissing the complaint be ordered with costs in all courts.

All concur.

NOTE ON "LIABILITY OF TRUSTEES OF MANUFACTURING CORPORATIONS."

*Object.*—The object of the provision, so far as relates to creditors, or persons dealing with the corporation, appears to have been, to give such notoriety to the pecuniary condition of the company, through the publication of its annual statement, as to deprive it of credit, if it should be unworthy of it, and to give to persons to whom it might become indebted, while the statement should be withheld, the personal responsibility of the trustees for such indebtedness. Shaler & H. Q. Co. *v.* Bliss, 27 N. Y. 297. So much of that object as looks to the security of the creditor dealing with the corporation while it is in default, is accomplished by giving to the creditor the personal responsibility of those who are trustees when his debt is created. Id. The theory of the statute in this respect, and of the action against the trustee, is, that the creditor, not finding the statement published, which would have enabled him to decide whether the corporation was entitled to credit, entered into the contract in reliance upon the personal responsibility of the trustees. Upon that assumption, its reliance must be upon the trustees who are such when the debt is created, and not upon persons who have ceased to be, or may thereafter become, trustees. Id. The creditor cannot claim that he gave credit, under the provisions of the statute in question, to persons who were not trustees when the debt was contracted. Id.

The true interpretation of the statute is, that three circumstances must concur in point of time, to render a trustee liable, viz.: The existence of the debt; the existence of the default in making the report; and the trusteeship. Id. Where these concur, the trustee is liable for all debts, if he is such trustee when the default occurs. If

he is not a trustee at the time of the default, but becomes such afterwards, then his liability is limited to debts created while he remains trustee, and while the default continues. Id. These positions are all substantially embraced in the decision of the court of appeals in the cases of Shaler & H. Q. Co. *v.* Bliss, *ante;* Garrison *v.* Howe, 17 N. Y. 458, and Boughton *v.* Otis, 21 Id. 261. The only material words are "the trustees" shall be liable for the debts "that shall be contracted before such report shall be made." Only those who are trustees, when the debts are contracted, come within the term. Id.

It was the purpose of the law-makers to require the report to be made, published and filed, not only for the information, benefit and protection of existing creditors of the company, but of all persons who might thereafter enter into contract relations with it. Allen *v.* Clark, 108 N. Y. 269. It may also have been their purpose to require the report from every manufacturing corporation as a check upon extravagance and mismanagement of its affairs by its trustees, by constantly keeping before them the reminder that at least once a year the affairs of the company are to be exposed to the public view. It may also be supposed that these reports were required, so that information might be readily obtained by assessors for the purpose of taxation, and by other public officials who might have occasion to supervise the conduct of the corporation, or to proceed against it for any purpose whatever. Id. To make sure of the accomplishment of these important purposes, the trustees are made personally liable for all the · debts of the company in case of its failure, within the time specified, to make the report. Id.

Under §§ 12 and 13, chap. 40 of 1848, the trustees are declared to be jointly and severally liable for all the debts of the company, in case of a violation of their provisions. Merchants' Bank *v.* Bliss, 35 N. Y. 412. This liability is not limited to the injury or damage sustained by the creditors in consequence of the violation. But, upon failure to file the report, or upon making a prohibited dividend, however small and trifling the amount, the trustees are subjected to the payment of the whole amount of the debt of the company then existing, and for all that shall be contracted; in the one case, before the report shall be made, and in the other, while they shall respectively continue in office. Id. These provisions appear to be severally punitive, inflicted on grounds of public policy, for the protection of creditors, and the prevention of frauds upon the public in respect to the financial condition of such corporation. The liability of the trustees is not imposed as an indemnity. It has no relation to the actual loss or injury sustained by the party in whose favor the action is given. Id. The action depends wholly upon the statute. There never was any such remedy, or cause of action, in whole or in part, at common law. Merchants' Bank *v.* Bliss, *ante.* If any action could have been maintained at common law, for either of the causes mentioned in §§ 12 and 13 of the general act in relation to manufacturing corporations, it could extend only to the actual

damages or injury sustained.    But these elements have nothing to do with the actions given by these sections.    It is not necessary that the creditor should have sustained any injury or damage by reason of their violation.    It is sufficient that the party prosecuting the action should be a creditor when the violation of the law takes place.    The right of action is given to the creditors, and they must be held to be the parties aggrieved.    Id.

The duty imposed upon manufacturing corporations by § 12 of the act of 1848, to make a report, is a corporate duty, to be discharged by making a report signed by the president and the majority of the trustees. Cornell *v.* Roach, 101 N. Y. 373.    The duty is not cast upon the trustees, either as such, or in their individual capacity.    The section makes it the duty of the company to make the report, and provide for the manner of performing it.    Id.    The act, as amended in 1860, provides that such corporations shall have not less than three nor more than thirteen trustees. A report made by a corporation organized, since the act of 1860, having the full number of trustees thereby authorized, if signed by seven trustees, is, in that respect, a valid report.    Id.    So also of a corporation previously organized which, under the authority of the act of 1860, has increased its number of trustees to thirteen.    The original act required that there should be not less than three, nor more than nine trustees. The corporation previously organized, which has not availed itself of the act of 1860, if there were nine trustees, could make a report signed by five trustees.    Id.

In this case, an action was brought against the trustees of a manufacturing corporation to recover a debt of the corporation because of a failure to make and file a report for the year 1877.    Four of the trustees joined in an answer.    One count of the answer averred that said trustees failed to make a report for the year 1873, and for each year thereafter, and that more than three years had elapsed since any penalty or claim arose against them in favor of the creditor.    The number of trustees of the corporation was not alleged.    This count was demurred to, and it was held that it was defective, in that it did not aver that defendants were trustees in 1873, or thereafter, previous to 1877; and in that it did not allege any default by the corporation prior to 1877.

The rule was stated in Bruce *v.* Platt, 80 N. Y. 379, that the statute creating the liability of trustees of a corporation, organized under chap. 40 of 1848, for failure to file the annual report, is penal and not to be extended by construction; and that, in an action to enforce a liability thereby created, nothing can be presumed against the trustees, but that every fact necessary to establish their liability must be affirmatively proved. This principle was followed in Tovey *v.* Culver, 54 Super. 404.

*Extent of liability.*—The statute provides that, if the indebtedness of the company shall at any time exceed the amount of its capital stock, its trustees assenting thereto shall be personally and individually liable for the excess to the creditors of the company.    Anderson *v.* Speers, 21 Hun, 568.    The provision upon this subject is literally the same as

that contained in an act of congress, relating to similar corporations organized in the district of Columbia, under which it has been held that an individual creditor of the company cannot maintain an action in his own behalf for the recovery of his debt against the officers assenting to the unlawful increase of the company's indebtedness. Horner v. Henning, 93 U. S. 228. A provision precisely the same is contained in the laws of the state of Illinois, and under that act it has been also held that an action by one creditor, on his own behalf alone, cannot be sustained. Buchanan v. Barlo I. Co., 3 Bradw. 191. A similar question has also been decided in the state of Massachusetts in the case of Merchants' Bank v. Stevenson, 10 Gray, 232. The statute in the last case was much more favorable than either of the other acts above mentioned to the right of one creditor to maintain an action simply for the recovery of his own debt. But the court held that the other creditors of the company should be made parties, either directly or theoretically, and that an action in equity alone could be maintained. In this respect the decision was the same as that made in the case of Horner v. Henning, ante.

Other provisions of the same or other statutes in this state, by their terms, render the officers and stockholders in default jointly and severally liable for all the debts of the company. Anderson v. Speers, ante. This is the case as to the trustees who may fail to make and publish the annual report required, or who may require a dividend when the company is insolvent, or which, of itself, will render it insolvent, or diminish its capital stock, or for making a report which shall be false in any of its material representations. Id. The provision is in form the same which declares the liability of stockholders for the debts and contracts of the company previous to the full payment of its capital stock, and to laborers, servants and apprentices, for services performed for the company. There is a very evident distinction between these several provisions and § 23, chap. 40 of 1848. As those provisions render the stockholders and trustees jointly and severally liable for all the debts of the company to the time existing, there can be no impropriety in allowing each one of the creditors to maintain an action, in his own behalf, for the recovery of the debt due to himself. The liability in such case is several and individual in its character, including all the debts owing at the time by the company. Id. No special necessity can exist for requiring other creditors to be joined. No injustice can result from proceeding in that manner, where the persons proceeded against are liable for all the existing debts of the corporation. Id. It has been held for this reason that the action may be maintained under provisions of this nature, by each creditor in his own behalf. Bank of Poughkeepsie v. Ibbotson, 24 Wend. 473; Van Hook v. Whitlock, 3 Paige, 409; Burr v. Wilcox, 22 N. Y. 551; Shellington v. Howland, 53 Id. 371; Boynton v. Hatch, 47 Id. 225; Garrison v. Howe, ante ; Mathez v. Neiding, 72 Id. 100.

In Wiles v. Suydam, 10 Hun, 578; an action was brought against a

trustee to enforce the liability created by the omission to make the annual report required by the statute. The trustees for such an omission were held liable for all the debts of the company then existing, or contracted before the report is made. The cases of Chambers *v.* Lewis, 28 N. Y. 454, and Jones *v.* Barlow, 62 Id. 202, were also dependent upon the same provision.

But § 23, chap. 40 of 1848, does not render the trustees, assenting to the unlawful increase of the company's indebtedness, liable for all the debts of the corporation, as the above mentioned provisions have done. It declares them liable only to the extent of the excess of the indebtedness over the amount of the capital stock of the company, and then not to the creditors individually, but in terms to the creditors of the company collectively, and as a mass. This substantially creates a fund to the extent only of the unlawful excess of indebtedness, in the distribution of which the creditors are ratably entitled to participate. Anderson *v.* Speers, *ante.* An action, brought in any form under this provision, will require an accounting for the purpose of ascertaining who may be the creditors of the company, to what extent it may be indebted to each individual, and for the purpose of discovering what may be the excess of indebtedness beyond the amount of the capital stock, and the ratable manner in which it should be distributed among such creditors. Whether the action is brought by one person, or by all the creditors together, or by one on behalf of himself and the other creditors of the company, the proceeding must be substantially the same. No individual creditor can recover more than the proportionate amount of the excess of the indebtedness applicable to his own debt. Id. In any event, a full investigation and accounting will be necessary to determine the rights of the parties.

As many actions can be bought against the trustees as can be brought against the corporation. Roach *v.* Duckworth, 95 N. Y. 391. § 12 makes all the trustees jointly and severally liable for all the debts of the company, in case of failure to make the report required. Under it, a creditor may sue all the trustees successively until he shall obtain satisfaction, or he may at the same time commence a suit against each trustee. No trustee can properly set up the pendency of a suit, or the recovery of a judgment, against any other trustee as a bar to a recovery against himself. Id. A judgment can be enforced only against the trustee sued. Under this section, as amended by chap. 510 of 1875, all the other trustees are bound ratably to contribute to the amount recovered against and paid by such trustee. Id.

A separate action is given to each individual creditor by the statute for his separate debt, though his is not the only debt against the corporation. Wiles *v.* Suydam, 10 Hun, 578. The imposition of a liability to pay all the debts of the company naturally means a liability to pay each creditor his individual debt. It has been the uniform practice since 1848 for each creditor to sue alone for his debt under this section. Id. The opposite construction would practically destroy the protection

the law intended to give the creditor against the default of the trustees. How are " all the debts" to be known ? If some are not due, they cannot be joined. Jones *v.* Barlow, *ante.* Who can compel the other creditors to join with plaintiff ? Some debt may be disputed by the trustees. What interest· has a creditor, whose debt is not disputed, in the controversy ? " If the default to make and file the report continues, where is a test to be made to determine what debts shall be joined with plaintiff's ? These debts may be created day by day until the report is made and filed. After a suit is commenced, which includes all debts due from the company to all of its then creditors, what is to be done with the after created debt ? By constantly creating new debts all liability will be at an end, so far as this section is concerned, in case all creditors must unite in the action. In Jones *v.* Barlow, *ante,* a portion of the creditor's claim was stricken out as not due. This one case recognizes, not only that one creditor may sue, but that he may sue twice for his individual claim. Wiles *v.* Suydam, *ante.*

An action against trustees of a manufacturing corporation to recover for failure to file a report may be brought against such trustees as the creditors may select, and the non-joinder of the other trustees constitutes no defense. Halstead *v.* Dodge, 51 Super. 169; Strong *v.* Sproul, 4 Daly, 326; Quigley *v.* Walter, 2 Sweeney, 175.

The liability of trustees under § 12, chap. 40 of 1848, is not joint. It is either joint or several, as the creditor may elect to sue one or all, or as one or all may be served with process. Hoag *v.* Lamont, 60 N. Y. 96. The trustees of a manufacturing corporation are made jointly and severally liable for the debts of the company by the omission to make the annual report required by statute. Id.

The case of failure to make and file the report and publish it as required by the law, is not like that of a stockholder sued for an amount equal to his stock. Morey *v.* Ford, 32 Hun, 446. In the latter case, if the stockholder pays an amount to any creditor of the company equal to his stock, he is free. Garrison *v.* Howe, *ante.* Or, if he is himself a creditor to an amount equal to his stock, he cannot be called upon to respond to another creditor for his debts. But the trustee is liable for all the debts, and he cannot defend, because he has paid any sum short of the entire indebtedness of the company. Morey *v.* Ford, *ante.*

The liability of a trustee is created by statute and is in the nature of a penalty imposed for neglect of duty in not filing a report showing the situation of the company. Wiles *v.* Suydam, 64 N. Y. 173. The liability is far more extensive than that of a stockholder. It is for all debts, while the former is limited to the amount of the stock. The trustee is not entitled to contribution except by statute, and contributions are from different persons than in the other case. Id.

The court of appeals held, in the case of Merchants' Bank *v.* Bliss, *ante,* that an action brought against a trustee of a corporation to recover the liability imposed by § 12, chap. 40 of 1848, was governed by the

statutory limitations applicable in action to recover penalties. Since that decision, the subject of actions under that section of the statute has frequently been under the consideration of that court with the uniform conclusion that the actions therein provided for are penal in character, and are not in any respect based upon the theory of affording compensation to the injured party for damages sustained by reason of the omission to file a report. Stokes v. Stickney, 96 N. Y. 323; Wiles v. Suydam, 64 Id. 173; Easterly v. Barber, 65 Id. 252; Knox v. Baldwin, 80 Id. 610; Veeder v. Baker, 83 Id. 156; Pier v. George, 86 Id. 613. The logical effect of these decisions is to classify such actions among those usually designated as actions *ex delicto*, and which, at common law, were extinguished by the death of the tort-feasor. Stokes v. Stickney, *ante*.

The provisions of § 15, chap. 40 of 1848 are highly penal in their nature, and are to be classed with actions *ex delicto*. Brackett v. Griswold, 103 N. Y. 425. They do not affect or concern any property right or interest as the subject of the injury. Id. Stokes v. Stickney, *ante*. At common law, the action abated upon the death of either party. The provisions of the Revised Statutes affect only injuries to property rights. Where such are not invaded, the common law rule still prevails. Hegerich v. Keddie, 99 N. Y. 258. The cause of action for the penalty dies with the intestate. Brackett v. Griswold, *ante*.

§ 12 of the act of 1848 is absolute that the trustees shall be liable for all the debts of the company, if the report is not made, no matter by whose default. Miller v. White, 50 N. Y. 137. If one of the trustees does all in his power to have it made, yet, if the president or a sufficient number of his co-trustees to constitute a majority decline to sign it, or if the secretary and president decline to verify it by oath, the faithful trustee seems to be absolutely liable as well as those who refuse to do their duty. Id.

A subsequent section makes the trustees liable for the company's debts if they pay a dividend not earned, but allows a trustee to escape that liability if he shows his dissent to the dividend in the manner therein provided. Id. But no qualification is made to the liability under § 12. Id.

*Report.*—The provisions of the statute are penal in their nature and must receive a strict construction. Wallace & Son v. Walsh, 52 Hun, 328; Whitney Arms Co. v. Barlow, 63 N. Y. 62. In Bruce v. Platt, 80 N. Y. 381, it was said that the statute in question is penal, and not to be extended by construction; that, in an action to enforce a liability thereby created, nothing can be presumed against the trustees, but that every fact necessary to establish their liability must be affirmatively proved. Garrison v. Howe, *ante;* Miller v. White, *ante;* Whitney Arms Co. v. Barlow, *ante.* In Blake v. Griswold, 104 N. Y. 617, it was stated that the rights and liabilities of parties under the penal provisions of the manufacturing act are not only regulated by special provisions of law, but are wholly created by such special provisions, and have no existence outside of the exceptional and peculiar authority and regulation

of the statute. It has been repeatedly held that the object of the provision requiring reports to be made, in so far as it relates to creditors or persons dealing with the corporation, appears to be to give such notoriety of the pecuniary condition of the company, through the publication of its annual statements, as to deprive it of credit if it should be unworthy of it. Shaler & H. Q. Co. *v.* Bliss, *ante ;* Garrison *v.* Howe. *ante.* In the latter case it was stated: "But the provision is highly penal, and the rules of law do not permit us to extend it by construction to cases not fairly within the language." Merchants' Bank *v.* Bliss, *ante ;* Wiles *v.* Suydam, *ante.*

Though the statute is in one sense and for some purposes of a penal character, in so far as it subjects the trustees to liability for the debt of the corporation for their neglect to make the report, Whitney Arms Co. *v.* Barlow, *ante,* it is also remedial, as it confers upon the creditor a remedy for his debt and takes from the governing body of the corporation the shield and protection of the corporate organization, and holds them to a personal liability for debts contracted. Id. The reports and statements of the corporation, made and published professedly in compliance with the statute, should, therefore, receive a liberal interpretation. The benefit of any doubt as to the true sense and meaning of the document is to be given to the trustees sought to be charged. Id. This is a reasonable rule in the absence of any evidence, in or out of the report, of an intent to evade the statute and put forth a report false and deceptive; and when the report, read and interpreted as claimed by the trustees, is true in fact. Id.

At the time of the enactment of the law of 1848, payment of the capital stock of manufacturing corporations was required to be in money. By a subsequent statute, trustees of such corporation were authorized to purchase mines and other property, and to issue stock to the value thereof in payment therefor. The same statute enacted that, in all statements and reports of the company to be published, the stock so issued should not be stated or reported as being issued for cash paid into the company, but should be reported in this respect according to the facts. The form of the report, as prescribed by § 12 of the original act, was thus modified in all cases where the whole or a part of the capital stock was issued in payment for property purchased instead of for cash. Whitney Arms Co. *v.* Barlow, *ante.* The reports should in all essential particulars comply with these statutes. The facts need not necessarily be stated with technical and grammatical precision and accuracy, but they must substantially appear and be verified by the oath of the president and a majority of the trustees, and so distinctly stated that, if untrue, perjury can be assigned or an action maintained by any one sustaining legal injury from the misstatements. Id. The reports of corporations should receive a reasonable interpretation, and excessive nicety or exactness should not be exercised in bringing them to the tests of the statutes. Id.

The statute requires the statement to be signed by the president and

a majority of the trustees. Glens Falls Paper Co. *v.* White, 18 Hun, 214. Where there are five trustees of a corporation, of whom the president is one, a report, signed by the president and two trustees, complies with the statute. Id.

Where the report is verified by the president to the effect, that "it was, in all respects, true to the best of his knowledge and belief," it was held that this was a sufficient verification. The statute does not expressly require a positive affidavit. Indeed, it gives no form whatever. The word "verified" by no means implies, in all cases, an unqualified affidavit. It may be impossible for the president to swear positively to the amount of debts. It is easy to conceive that other officers of the company may have contracted debts for which the company is liable, and of which he is ignorant. Id.

Where the report states that "the amount of its existing debts does not exceed $75,000," it is a sufficient statement. Id. The object of the statute, in requiring these statements, is to exhibit to the public the pecuniary condition of the company, in order that the public may know how far it is safe to deal with it. It may be difficult to compute to the very cent the exact amount of indebtedness, with accrued interest, owing at the date of the report. It is a reasonable compliance with the statute to show that the indebtedness does not exceed a certain amount. Id. Whitney Arms Co. *v.* Barlow, *ante.*

Where the statement in the report as to its capital is as follows, viz.: "Amount of capital stock, of which all but five shares were issued for the purchase of property necessary for the business of the association, and such five shares have been paid in full, $15,000," it is defective. It cannot be determined therefrom what proportion of the capital stock has been paid in in cash, and how much has been issued for property. If the statement also gave the total number of shares, or the par value of the share, or the amount of cash paid in, the matter, in either case, would have been clear. Id.

§ 12, chap. 40 of 1848 is highly penal, and should be construed like other penal statutes. Whitaker *v.* Masterton, 106 N. Y. 277. Its scope should not be enlarged by construction or implication. The courts should not impose the penalty except in cases where the plain language of the section requires it. Id. Whitney Arms Co. *v.* Barlow, *ante ;* Wiles *v.* Suydam, *ante ;* Bonnell *v.* Griswold *ante ;* Brackett *v.* Same, *ante.* A report, which states the amount of the capital, that it was all actually paid in, and the amount of the existing debts of the company, is a full compliance with this section. This is all that is required to be stated. The penalty is imposed for an omission to make, publish and file a report containing such matters. Whitaker *v.* Masterton, *ante.* The penalty can not be incurred, if the report in form complies with the section, unless it is false. In this event, the liability is imposed by § 15 of the act. Id.

Chap. 333 of 1853 purports to be an act amending the general act of 1848. § 2 of this amending act imposes no penalty for non-compliance with its

requirements. § 12 of the general act cannot be so incorporated into this section, or this section so incorporated into that one, as to make the penalty prescribed by the former applicable to the latter section, Id.

§ 2 of the act of 1853 does not require the report to specify how much of the stock was paid for in cash and how much in property. Id. It would be too rigorous to hold that, for a failure to make such specifications, trustees are to be held liable for all of the debts of the corporation. This is made clear by a reference to chap. 510 of 1875, which simply amends section 12 of the act of 1848, by re-enacting the same with amendments. It still requires a report to state only "the amount of capital and the proportion actually paid in, and the amount of existing debts," and, for a failure to make such report, the trustees are made liable for all the debts of the corporation. Id.

The legislature did not intend to inflict upon trustees of a manufacturing corporation a penalty for not specifying in their report how much of the capital stock of the corporation was issued for cash, and how much for property. Id. See Bonnell *v.* Griswold, *ante ;* 89 Id. 122; Pier *v.* Hanmore, *ante.*

In the case first above cited, an annual report was filed by a manufacturing corporation stating the amount of its capital, and that all of it had been paid in in cash, patent rights, merchandise, machinery accounts, etc., necessary to the business and for which stock to the amount of the value thereof has been issued by the company. In an action by a creditor of the corporation against the trustees for alleged failure to make the prescribed report, it was held that the report was a sufficient compliance with the requirements of the act; and that it was not necessary to specify therein how much of the capital was paid in cash and what amount in property.

Where an annual report is filed by a manufacturing corporation, which in form complies with the requirement of section 12 of the act of 1848, the trustees are not subject to the liability imposed by that act for a failure to file a report, though the one filed is untrue. Pier *v.* Hanmore, 86 N. Y. 95. If the report filed is untrue, and constitutes a false representation, it renders liable only the trustees who signed it, and who signed it knowing it to be false. Id. But the mis-statement is not equivalent to an entire failure of the company to make the required report, which will render all the trustees liable. Id. The case of Bonnell *v.* Griswold, 80 N. Y. 128, is decisive of this point. But *it seems* that, where the report states the amount of capital paid in, without stating that a portion was paid for in property, as is required by the act of 1853 when such is the case, the fair import of the statement is that the payment was in cash, as was required by § 14 of the original act.

The purpose for which the annual reports are required to be published is that the public may be correctly informed of the financial condition and resources of such companies, in order that it may judge of the credit to which they are entitled. It cannot be doubted that the amount of actual cash capital invested in their business is a most material element in such

an inquiry.  Id.  The statute, therefore, requires that the amount of capital actually paid in be stated in the report.  By § 14 of the act of 1848, it is declared that nothing but money shall be considered as payment of any part of the capital stock, and a statement that a certain amount of capital stock has been paid in, when contained in a report made in pursuance of the statute, upon a careful consideration of its provisions, necessarily imports that it has been paid in money, as no other mode of payment is recognized.  Id.  By the supplementary act of 1853, the trustees are authorized to purchase property necessary to the business of the company, and issue stock to the amount of the value thereof in payment therefor, which stock is declared to be full stock, not liable to further calls.  Stock so issued can not be regarded as issued for capital paid in, and the act of 1853 specially provides that in all reports of the company to be published, such stock shall not be stated as issued for cash paid in to the company, but shall be reported in this respect according to the fact.  Even in the absence of this provision, it would be manifestly incorrect to report the nominal amount for which such stock was issued as capital paid in to the company, especially in view of the provision of § 14, that nothing but money shall be considered as payment of any part of the capital.  Id.  But the express prohibition of the act of 1853 prevents any possible misunderstanding as to the meaning of the term " paid in."  It makes it clear that a statement in a report published under the manufacturing law, that a certain amount of capital has been paid in, must, on a strict view of the statute, be regarded as a representation that such capital has been paid in in cash, unless it is specified that the alleged payment consists of the issue of stock for property purchased.  Id.

The words " knowing it to be false," import a willful misrepresentation, with actual knowledge of its falsity, and not merely such constructive knowledge as can be imputed from the presumption that the officer signing the report knew the law and comprehended the precise import of the language used, when construed with reference to the statutory provision.  Id.  In the absence of the provisions that nothing but cash shall be considered as payment of capital, and that, if stock is issued for property, it must be so specified, a general statement that so much capital had been paid in would not, in common parlance, be very far from correct, even though the capital had not been all paid in cash.  To charge the officer with the severe penalty imposed for signing a false report, knowing it to be false, some fact or circumstance must be shown indicating that it was made in bad faith, willfully, or for some fraudulent purpose, and not ignorantly or inadvertently.  Id.

Where the report is false in a material point, and plainly proven to have been known so to be the officer signing it, it is not necessary to prove the purpose for which the misrepresentation was made, or that any particular fraud was intended; as, if a trustee should knowingly state that a larger amount of capital had been paid in than had in fact been paid, or state the indebtedness of the company at less than the actual amount.

Note on " Liability of Trustees of Manufacturing Corporations."

When the knowledge of the trustees is not directly proved, but is matter of inference, the existence of a guilty motive or purpose may be material to establish the scienter. In determining whether the statute has been willfully violated, something more must be shown than a want of strict compliance with its terms. Id.

The statute is highly penal. It subjects the offender to all the debts of the company contracted while he is an officer, without regard to the amount of his stock and without any right of contribution such as is provided for in the case of an entire omission to make a report. Id. It is intended to punish, not a mere act of negligence or ignorance, but only an intentional misrepresentation. Id. It contemplates that erroneous reports may be made, but punishes only the officers who sign them knowing them to be false. Id.

But the necessity of such proof of a willful and fraudulent purpose, is confined to a case, where the sole falsity of the report is in a statement that the capital stock has been paid up in full, without stating that all or a portion was paid for in property, as is required by the act of 1853.

To charge the officer with the severe penalty imposed for signing a false report knowing it to be false, some fact or circumstance must be shown indicating that it was made in bad faith, willfully, or for some fraudulent purpose, and not ignorantly or inadvertently. Pier *v.* Hanmore, 86 N. Y. 95; Bonnell *v.* Griswold, 89 Id. 122. This is a question of fact which must be passed upon before the liability can be adjudged. Id. And where, as a consequence it was possible for the officer to have signed what the court construes to be a falsehood, but what, as he understood it, might have been a truth. In such a case, it is just to require that some evidence of bad faith, something indicating a consciousness of falsehood instead of a belief of truth, should be given. In other words, the penalty follows an actual and not a constructive falsehood; one known and understood to be such and not possibly believed to be otherwise. Bonnell *v.* Griswold. *ante.*

Without either bad faith or willful or fraudulent purpose on the part of the trustees, or any fact showing actual fraud, the penalty imposed for signing a report " false in any material representation," is not incurred. Butler *v.* Smalley, 101 N. Y. 71.

The penalty imposed by § 15, chap. 40 of 1848, upon the trustees of a corporation, organized under this act, for signing an annual report " false in any material representation " with knowledge of its falsity, is not incurred simply because of an omission, from the aggregate of indebtedness, of certain liabilities of the company, though this was known to the trustees at the time the report was made. Butler *v.* Smalley, *ante.*

§ 15 of the manufacturing act makes it incumbent upon a creditor to show that the report signed by the trustees is false in a material representation, that they signed it knowing it to be false and that it was made in bad faith or for some fraudulent purpose. Wickens *v.* Foster,

22 W. Dig. 426; Pier *v.* Hanmore, *ante ;* Bonnell *v.* Griswold, 89 Id. 122; Whitaker *v.* Masterton, 21 W. Dig. 209. There is no statute against such a purchase. It is competent for a new company to so use its cash, though there was a full expectation that such new company would use its cash in buying property or assets of the old corporation. Id. The mere fact that it bought out assets of an old company fairly appraised at their fair value, does not authorize the trustees, or call upon them, in making a report, to state that the stock had been paid for in property. Id.

It is just to require some evidence of bad faith, something indicating a consciousness of falsehood instead of a belief of truth. Id. Bonnell *v.* Griswold, 89 N. Y. 122.

A report, stating the amount of the capital of the company, that it has all been paid in, and the amount of its existing debts, is a compliance with § 12 of the act of 1848. Whitaker *v.* Masterton, *ante.* While it is true that § 2, chap. 333 of 1853, requires the report to state the amount of stock which may have been issued for property, the omission itself to do so will not render the trustees making the report personally liable for the debts of the company under § 12 of the act. Said act has not itself so provided or declared. The trustees' liability must accordingly depend upon the force and effect to be given to § 15 of the act of 1848. This section does not declare the trustees to be personally liable on account of their omission to distinguish the amount paid in cash from the amount of stock issued for property purchased by the company. But it does declare that the officers of the company who shall make any report which shall be false in any material representation, knowing it to be false, shall be liable for all the debts of the corporation contracted while they are officers. Id. It is essential to the maintenance of an action of this description that the trustees should appear to have signed the report knowing it to contain a materially false representation, and that it was made in bad faith or for some fraudulent purpose. Id.; Bonnell *v.* Griswold, 80 N. Y. 128; Pier *v.* Hanmore, *ante ;* Bonnell *v.* Griswold, 89 Id. 122.

If a report is filed, which is false within § 15 of the act of 1848, it by no mean follows that there has been a compliance with § 12 of said act. Bonnell *v.* Wheeler, 1 Hun, 332. A report which is false can scarcely be said to be a report which is required by § 12. When such is the case, an action may be upheld under § 12, if, for any reason, the proof upon the trial will not warrant a judgment under § 15. Id.

It is not necessary, in order to render the trustees individually liable, under § 15 of the act of 1848, for the debts of the corporation, that a failure to make and publish should concur with failure to file the annual report. The failure to file within a reasonable time after the twenty days allowed by the statute for making it is of itself a sufficient violation of the act, to subject them to the penalty. Butler *v.* Smalley, 49 Super. 492; Cameron *v.* Seaman, 69 N. Y. 396; Gildersleever Dixon, 6 Daly, 76. A failure to file until the lapse of twenty-four days after

making and publication, where there is no obstacle or excuse offered for the delay, will render the trustees liable without regard to the question of their good faith. Butler v. Smalley, ante. In an action to hold a trustee of a corporation, formed under the act of 1848, individually liable for its debts, the complaint may join a cause of action for failure to file the annual report as required by § 12, and the cause of action for a false report in violation of § 15, of the act. Butler v. Smalley, ante; Bonnell v. Wheeler, 1 Hun, 332.

The statute treats the report as made, and in obedience to its command. The statute does not declare that, if false, it shall be as no report, or annul it. It leaves the report in its place as part of the scheme or plan provided by statute, and imposes a penalty or punishment upon those who signed it, knowing it to be false, and upon no others. Bonnell v. Griswold, 80 N. Y. 128. Not all who sign the false report are liable therefor, but only those who sign it, knowing it to be false. As the statute makes this discrimination, the court cannot ignore it. Id.

§ 12 makes all the trustees liable for an omission on the part of the company to make a report. It need not be signed by all the trustees, but only by a majority. The statutory liability imposed by this section does not attach, if a report is made in terms complying with the statute, though some of the representations are untrue. A term cannot be implied into a statute, for the purpose of extending or imposing a penalty. If the legislature has not used words sufficiently explicit to include all the cases which fall within the mischief intended to be presented, the court is not competent to enlarge them. Id.

In Whitney Arms Co. v. Barlow, the action was against trustees for omitting to make a report under § 12 of the act of 1848. It appeared that one had been made, and its sufficiency in form adjudged by the court of appeals. See 63 N. Y. 62. The plaintiff claimed that it was untrue, and therefore a non-compliance with the requirement of the section. The court stated, " If this claim is well founded, the fact is not available to the plaintiff in this action. The suit is based upon the allegation of an omission to make, file and publish any report, not upon an allegation of the falsity of the report made."

No special section of the act of 1848 was amended by § 2 of the act of 1853. The latter section is complete in itself, and makes no reference to any of the provisions of § 12 of the former act. It cannot, therefore, he brought within its operation so as to affect one disobeying the provisions of § 2 of the act of 1853 with the penalty prescribed by § 12 of the act of 1848. For an omission to perform the duty enjoined by it, it imposes no penalty. Its language is directory, and, if not obeyed a report made is false and subjects the person making it to the penalty perscribed by § 15 of the act of 1848. The latter section applies to any certificate or report made. But the penalty declared by § 12, cannot, in such case, apply. Bonnell v. Griswold, ante.

In 1848, nothing but money could be considered as payment of capital stock. The act of 1853 permits, under certain circumstances, prop-

Note on " Liability of Trustees of Manufacturing Corporations."

erty to be received in payment, and directs that fact to be stated in the reports, but neither by direct language, nor by reference, does it impose for its omission the penalty prescribed in § 12 of the act of 1848. The court cannot do so, for that would violate the rule that a penal law shall not be extended by construction, and would substitute the discretion of a judge for the express authority of the law. Id.

The act of 1853 did not in terms amend § 12 of the act of 1848. But in 1871, the latter section was specifically amended, and again in 1875. The section was re-enacted so as to include the original section, except as altered by the amendments of 1871 and 1875, but without any reference to the act of 1853, or the terms of either section of that act. Nor was the act of 1853 repealed. It has since its enactment stood apart and separate from § 12 of the act of 1848 as much before, as after, the amendment of 1875. Id.

In this case, the verification to the report was as follows: "Sworn to before me this 13th day of January, 1870, Charles W. Anderson, Notary Public, New York County." The report was signed by the president of the corporation and was actually verified by him before a proper officer. It was held that the verification was sufficient. Id.

Where a liability has been incurred by the trustees of a manufacturing corporation for a failure to file a report within the first year of the organization of the corporation, but no action has been commenced thereon until the going into effect of chap. 510 of 1875, amending the section imposing the liability, the creditor's right of action is lost. The amendment repeals the original section, and requires no report until the corporation has been organized at least one year, and the saving clause relates only to actions then pending. Knox v. Baldwin, 80 N. Y. 610.

The penalties imposed by the act of 1848 for a violation of any of the requirements of § 12, are also applicable to any violation of the additional requirements of the amendatory act, chap. 333 of 1853. Pier v. George, 14 Hun, 568. This severe legislation is in the interest of the public for the protection of creditors, and the prevention of fraud in respect to the financial condition of the corporation. Id. The amendment of 1853 is as though it was originally inserted in the act of 1848. All the penalties of that act must be held to relate thereto. Id.

It is well settled in this state that the recovery allowed by statutes against trustees for the failure of a corporation or its officers to make a report, is a penalty. Merchants' Bank v. Bliss, ante ; Garrison v. Howe, ante ; Adams v. Mills, 60 Id. 536; McHarg v. Eastman, 35 How. 205; 7 Robt. 135 ; Victory W. P. Co. v. Beecher, 26 Hun, 48. The general rule is that a penalty given by statute cannot be recovered after its repeal, though incurred before, unless the repealing act reserves the right of action. Victory W. P. Co. v. Beecher, ante ; Butler v. Palmer, 1 Hill, 324; Smith v. Banker, 3 How. 142. The plaintiff in such an action must be able to show to the court a statute in force at the time of the trial giving the penalty. This he does, if his right is reserved by a repealing act.

But this he cannot do, if the statute is repealed by express enactment or necessary implication without any saving clause on which he can stand. Id.

If the property has been purchased by the corporation for a price in excess of its value, and if the trustee knew at the time when he signed such report that such was the fact, then the creditor is entitled to recover the debt sued for of the trustee individually. Brockway *v.* Ireland, 61 How. 372. All that is necessary to establish the legal fraud and take the stock issued out of the immunity assured to the stock honestly issued in pursuance of the act of 1853, is to prove two facts. (1) That the stock issued exceeded in amount the value of the property in exchange for which it was issued. (2) That the trustees deliberately and with knowledge of the real value of the property, overvalued it and paid in stock for it an amount which they knew was in excess of its actual value. Douglass *v.* Ireland, 73 N. Y. 100. The value must be determined in any action, in which the question arises, upon such evidence as may be given, having respect to the circumstances and the nature of the property. The scienter and guilty action of the trustees may be proved either directly or inferred from circumstances. Id.

Evidence as to the representations of other parties to the trustees, as to the value of the property transferred to the corporation in payment for its stock, is admissible upon the question of notice to the trustees of the actual value. Brockway *v.* Ireland, *ante.* It cannot be that such a corporation cannot, in good faith, buy property for its stock, unless each trustee has an actual personal knowledge, not only of the property, but of its fair value. They must, in many cases, depend upon the representations of experts and others presumed to have a practical knowledge of the property in question, and be competent to judge of its actual value. Id. In such cases, of course, the question remains open to be determined by the jury as to whether the trustees in good faith acted and relied on the opinions which they received, and believed the value of the property to be as represented. Id.

In Bolz *v.* Ridder, 19 W. Dig. 463, the report of the trustees of a corporation stated that the whole of the capital stock of the corporation had been paid up in full by the purchase of a certain described patent. An action was brought by a creditor of the corporation to enforce the statutory liability of the trustees for its debt, upon an allegation of the falsity of said certificate, etc. It was held that, though said certificate in form followed the statute, the question of the value of the patent, and whether it was worth the amount of the stock, is material and a question for the jury.

Under § 12, chap. 40 of 1848, as amended by chap. 333, of 1853, a report filed by the trustees of a manufacturing company must show how much of the capital stock has been paid in in cash, and how much has been issued for property transferred to the corporation. Pier *v.* George, 14 Hun, 468.

Note on " Liability of Trustees of Manufacturing Corporations."

Chap. 333 of 1853, amended the law of 1848, and provided that the trustees of the company may purchase mines, manufactories and other property necessary for their business, and issue stock to the amount of the value thereof in payment therefor ; and the stock so issued shall be declared and taken to be the full stock, and not liable to any further call ; neither shall the holder thereof be liable for any further payments under the provision of § 10 under the original act ; but, in all statements and reports of the company to be published, the stock shall not be stated or reported as being issued for cash paid into the company, but shall be reported in this respect according to the fact.

In Victory Webb. P. Co. *v.* Beecher, *ante,* the trustees of a manufacturing corporation, whose certificate of incorporation was filed, Oct. 6, 1874, failed to file, in January, 1875, the report required by § 12, chap. 40 of 1848. On June 7, 1875, chap. 510 of 1875 took effect, whereby the said § 12 was amended. The action was commenced in 1878 for causes of action alleged to have accrued against the company in 1875. The amending act of 1875 contained no saving clause, except of actions pending at the time it took effect. The plaintiff's causes of action had not then wholly accrued, and no action therefor was pending.

The effect of the amendment, as to cases not saved by the act, was to abrogate the existing provision by substituting another. The legislative action was equivalent to a repeal of the former section and the enactment of another section with new provisions. It was doubtless intended to relieve trustees, whose corporations had failed to make and publish the report, saving such liability only in cases where suits were then pending. Id.; Moore *v.* Mauster, 49 N. Y. 332.

Chap. 510 of the Laws of 1875 amended § 12 of the original act, and provided that the report should be made much in accordance with the requirements of the original section, which should state the amount of capital and of the proportion actually paid in, and the amount of its existing debts, Pier *v.* George, 14 Hun, 568.

From this provision, it seems to be the clear intention of the legislature to dispense with a particular statement in relation to the capital paid in in cash and stock issued in payment of property. Id.

Where the report stated that the capital paid in was $36,500, when the fact was that $25,000 thereof were stock issued in payment for property, the report is in plain violation of this statute. Pier *v.* George, *ante.*

*When made and filed.*—The general act declares that the company organized according to its provision, shall, annually, within twenty days from the first day of January, make a report stating the amount of the capital stock, the proportion actually paid in, and the amount of existing debts; and that, if any company shall fail to do so, all the trustees of the company shall be jointly and severally liable for all the debts of the company then existing, and for all that shall be contracted before such report shall be made. There is some obscurity in this language, when applied to different conditions of fact. "All the

trustees" are declared to be liable for "all debts." The most literal interpretation will undoubtedly give to the provision a broader significance than the legislature intended. For example, a board of trustees might be superseded by a new election immediately after a default, in making the report, had occurred. The retiring trustees, in such case, would be liable for the debt then existing. But in a literal use of the language, they would also be liable for all future debts of the company, if their successors should also fail to make the report, though they had ceased to be trustees or even stockholders. Notwithstanding the loss of all control in the management of the company and even of all interest in its affairs, they might remain liable forever in consequence of the continuing default of those who succeeded them. This clearly was not the intention of the legislature. Boughton *v.* Otis, *ante.*

Equally opposed is a construction which imposes upon a succeeding board of trustees a liability for debts which have been charged upon their predecessors by reason of the latters' default. Id. Under such construction, one body of trustees may retire from office charged with all the debts of the company, because they had not complied with the law, while those who are appointed to succeed in the management, cannot assume the trust without taking also the personal burdens which the former trustees had incurred by their own neglect. Id.

A board of trustees guilty of default in January, and retiring from office, is liable for all antecedent debts and for those only. The successors, if they continue the default until the next January, and no longer, are liable for the debts afterwards contracted during that year and for no other. Id. If they promptly obey the requirement of the act, they will escape all liability. If they do not, they very properly incur the hazard of the debts which they themselves as trustees contract. This hazard they may be quite willing to incur. But there is neither principle nor policy in making them responsible for the acts and defaults of their predecessors. Id. The general policy of the act is immunity from personal liability. This is attended by certain conditions demanding the personal observance of the trustees. A single case may occur, where successive boards may be liable for the same debts, viz. : where there are successive defaults in January. By the express terms of the statute, boards omitting to file their statements within the first twenty days of that month, are liable for all debts then existing. These debts may be wholly or partly the very debt for which their predecessors became liable, by reason of a default in the January of the previous year. But from this liability there is a chance of escape by a simple performance of the duty required; whereas, if such liability is assumed by a new board by the very act of taking office, there is no chance of escape except by refusing to serve. Id.

In Cameron *v.* Seaman, *ante,* the report was prepared, signed and verified within twenty days from January 1, 1874, was mailed to the clerk of

the county on the same day, but was not filed until the next day, and was first published on the twenty-fourth of January.

The filing and publication of the report must be done within twenty days from the first day of January in each year. It is not sufficient that it is prepared, signed and verified within that time, and filed and published as soon as practicable thereafter. The statute must have a fair and reasonable interpretation, and effect must be given to it according to the intention of the legislature as indicated in the language used. Its general purpose is clear, viz.: to provide authentic information to creditors of the company, and those who might have dealings with it, of its financial condition at fixed recurring periods, so as to enable them to act intelligently in their transactions with the corporation. This object would be accomplished by requiring a report to be prepared within the time limited in the statute, and filed and published as soon as practicable thereafter. As well as by requiring the several acts of mailing, filing and publishing the reports to be performed within the twenty days. Id. The publication necessarily is an act to be done after the making of the report, and so also is the filing. To make a report, may mean either the preparation of the report simply, by the person or body charged with the duty, or it may, in addition, include the act of presenting or communicating it to the person or body to whom the information contained in it is to be given. The words "make a report" in this section, refer to the preparation, signing and verification of the report. The limitation of twenty days does not apply to the acts of filing or publication. Id. If the company prepares the report within the time limited, and causes it be filed and published as soon thereafter as practicable, there is a compliance with the statute. The filing and publication must be within a reasonable time after the twenty days. This requirement, in view of the object of the statute, can only be satisfied by prompt performance and diligent action on the part of the trustees. Id.

Under the provision of § 12 of said act, requiring that, in case no newspaper is published in the town, city or village, where the business of the corporation is carried on, the annual report shall be published in some newspaper published nearest the place of business, where the business is carried on in a town, the town is the place of business within the meaning of the act. Cameron *v.* Seaman *ante.* The publication in a newspaper, published nearer to a point in the town than any other newspaper is to the same point, is a substantial compliance with the requirement, though such other newspaper may be published nearer to some other point in the town. Id.

The provisions of the statute requiring every company, incorporated under the manufacturing act of 1848, to make a report, do not authorize the making, filing and publishing of such report within twenty days before the first day of January, as well as within twenty days after such day. Cincinnati C. Co. *v.* O'Keefe, 44 Hun, 64. The reasonable construction of the act is that the publishing and filing

must be done within twenty days after the first day of January. This requirement is not satisfied by a filing in the month of December previous, though done within twenty days before the first day of January. Id. The intention of the legislature was to require each corporation, at a fixed period, to give a history of its condition, in order that creditors might ascertain the same and enter into engagements with such corporation, upon information furnished by the statement required by law.

In Cameron *v.* Seaman, *ante*, it was said that the statute intended to give the companies twenty days after the first day of January, in each year, to make up their accounts and prepare the statement to be embodied in the report.

The claim that the report, having been filed on December 28th, was on file during the first twenty days following the first of January, and therefore complied with the law, is clearly untenable in view of the decision in Cameron *v.* Seaman, *ante*. This case holds that the report must be made within the twenty days following the first of January, though it may be filed and published within a reasonable time thereafter. The requirement of the statute is explicit as to the making, but is somewhat indefinite in regard to the filing and publishing. Cincinnati C. Co. *v.* O'Keefe, *ante*.

In Carr *v.* Risher, 50 Hun, 147, a verdict and judgment were recovered against the defendant for the amount owing on eleven bonds, issued by the Pittsburgh and Martinez S. M. Co. on Sept. 28, 1865. The bonds were made payable Oct. 1, 1868, with interest semi-annually on the first of April and October in each year. The company was incorporated under the manufacturing laws of the State of New York, in September, 1865. The evidence established the fact to be that the defendant was a trustee of the company in January, 1867. No report was made or filed within twenty days from the first day of that month. The defendant was in the meantime a non-resident of this state. The debt was not due at the time of the alleged default. So much of the statute as created the liability was afterwards repealed by chap. 510 of 1875, which was enacted before this suit was commenced.

As the law was originally enacted in 1848, every company incorporated under it was required annually, within twenty days from the first of January, to make a report, which should be verified, published and filed; stating the amount of capital of the company, the proportion actually paid in, and the amount of its existing debt. For a failure to make, publish and file such report, all the trustees of the company were declared to be jointly and severally liable for all its existing debts, and such as should be contracted before the report should be made.

By the act of 1875, this section underwent an important and material change. It was then amended so as to require the company to make the report within twenty days from the first of January, if a year from the time of the filing of the certificate of incorporation shall then have

expired; and, if so long a time shall not have expired, then within twenty days from the first of January in each year after the expiration of the year from the time of filing such certificate. This change, it is true, only repeals so much of § 12, chap. 40 of 1848, as it omitted to include. Id.; Moore v. Mausert, *ante*. But the omission, which was then made, has an important effect upon the liability of an existing trustee. It leaves only so much of the act of 1848 applicable to his default or omission, as requires the company to make the report within twenty days from the first day of January, without indicating what January was intended. By omitting in the amendment of the section the word "annually," the law was left, as to preceding cases, in such language as to require no more than that the report should be made within twenty days from the first day of January, without directing that to be done annually, or specifying any first day of January from which the time was to be calculated. So much of § 12 of the act of 1848, as was continued in force by the act of 1875, directs no more than that every company, formed under the act, shall make the report within twenty days from the first of January of the year following the January of the year in which the company was incorporated. Carr v. Risher, 50 Hun, 147. By the omission of the word "annually," in the act of 1875, the penalty which had been incurred by the failure to make the report within the first twenty days of the month of January, 1867, was superseded and extinguished. Id.; Victory Webb. P. Co. v. Beecher, 26 Hun, 48; aff'd 97 N. Y. 651.

Under the manufacturing act of 1884, which requires trustees to file an annual report within twenty days from the first day of January in each year, the filing of such report within twenty days prior to the first day of January is not a compliance with the law. Gugenheimer v. O'Keiffe, N. Y. C. C., June, 1886. The report must be filed within the first twenty days of the month of January. Id. It was accordingly held, in this case, that a report filed and published on Dec. 28, was not a compliance with the act.

But in Zoller v. O'Keeffe, N. Y. C. C. 15 Abb. N. C. 483, a report was filed in the office of the clerk of New York county, on Dec. 28, 1883. It was held that, as far as the language of the act is concerned, the filing was nugatory; but on Jan. 2, 1884, it became effective as a filing within the provision of the act.

In Cincinnati C. Co. v. O'Keeffe, 120 N. Y. 603, no report was made, filed or published in January, 1884. One was made and verified in the form prescribed by the section on December 21, 1883. It was published the next day in a newspaper printed in the city wherein the business of the corporation was carried on, and filed in the office of the clerk of the proper county on the twenty-eighth day of the same month.

The section may be complied with by making a report within twenty days before the first day of January. The general understanding of the bench and bar has been that such reports must be made in the month of January in each year. In Boughton v. Otis, *ante*, it was stated that there

is an implication in § 12 of the statute that the report which ought to be made within the first twenty days of January in each year may be made afterwards, so as to prevent further liability from attaching. In Bolen *v.* Crosby, 49 N. Y. 183, it was said that, upon default of any company in making the report for more than twenty days after the first of January in any year, the trustees are made jointly and severally liable for all the debts of the company then existing, or that shall be contracted before such report shall be made. It was said, in Cameron *v.* Seaman, *ante,* that the statute intended to give the companies twenty days after the first day of January in each year to make up their accounts and prepare the statements to be embodied in the report.

If the word " from " is given the signification of the word " of," instead of " after," corporations will have forty instead of twenty days in which to make their reports. Id. In such case it is possible to comply with the section without filing a report in each year. For example, a report made in the last twenty days of December, 1883, and the next in January, 1885, before the expiration of twenty days from January 1, would be a compliance with the section though none was made in the year 1884; and so a report made during the last twenty days of December, 1885, which would make two reports in that calendar year, and the next one made in January, 1887, would, under such a construction of the statute, be a compliance with it. This construction will lead to a result not contemplated by the law-making power. The legislature intended that the reports called for by the section should be made in January in each calendar year, and within twenty days from the first day. Id.

The fact that the trustees, in making, and filing and publishing their reports, in December, act in good faith, does not relieve them from the liability imposed by the statute. Id. If personal good faith can be successfully interposed as a defense to such liability, no general rule for the protection of the public, no matter how plainly written in the statute, can be enforced. The question would always be not, was the statute violated, but, was wrong intended by its violator ? The requirement is a wise one designed for the protection of all having occasion to deal with such corporations. It should not be frittered away by strained or over-indulgent construction. Id.

The filing of a correct report in December, which remains on file in January next and is then true, is not a compliance with the statute. Id. It may as well be argued that a correct report, made and filed in November, or in any other preceding month, and remaining on file in January, and true, is a compliance with the section. Id.

Chap. 510 of 1875 does not relieve a corporation from filing an annual report, but only directs that such report need not be filed until a year has elapsed after the corporation is organized. Halstead *v.* Dodge, *ante.*

The duty to file the report is imposed by statute upon the corporation, and over it the court has no jurisdiction. Butler *v.* Smalley, 101 N. Y. 74.

Under another act, similar in its purpose, § 18, chap. 611 of 1875, a

director may escape the consequences of an omission on the part of the company, by himself subsequently and within a fixed time filing a certificate or report. But no such provision is to be found in the act of 1848. Id. It is enough, however, that it is filed within a reasonable time after the expiration of twenty days. Id. To prepare a report for filing and publication, to place it in good faith in the hands of the secretary for deposit in the clerk's office and in the office of a newspaper, is at least equal in significance to a delivery of a report to a mail agent for transmission to those places. Id. In the one as in the other case, the company avails itself of the usual method of performing its duty. In the absence of anything to show the want of good faith and active diligence in respect thereto on its part, a trustee, when no time. is fixed by the statute within which an act shall be performed, should not be subjected to a penalty, provided the thing required is actually done at a reasonable time, having regard to the nature and circumstances of the performance. Id.

Chap. 316 of 1878, amending chap. 269 of 1860, prescribed a mode for increasing the number of trustees to not more than thirteen, and for reducing the number to not less than three, in permissive language. It is to be observed that the section does not, in terms, forbid any other mode of reduction of the number of trustees. Wallace & Son *v.* Walsh, 52 Hun, 328. It is well understood that a corporation may cease to exist by abandonment or by non-user. The trustees and stockholders may voluntarily abandon the number of trustees prescribed in the original certificate. Vacancies may be brought about by resignations and the number reduced. The stockholders may accept the situation and only elect a less number of trustees. Id. A report signed by a majority of the actual trustees of the corporation is a sufficient compliance with the provisions of the statute and the trustees are not liable. Id.

In this case an action was brought to recover from the trustees of a corporation, created under the general manufacturing act, an indebtedness of such corporation, upon the ground that it had not made the annual report required by § 12, chap. 40 of 1848, as amended by chap. 510 of 1875. In the certificate of incorporation of the company, the number of trustees was fixed at twelve. Some time prior to the signing of the report in question, the number of trustees, by reason of vacancies and resignations, had been reduced to nine. At subsequent elections for trustees only nine trustees had been elected. The report for the year in question had been made, in form, to conform to the statute and was signed by six of the trustees of the corporation.

It has been held that the statute requiring the report to be made, signed, filed and published within twenty days from the first of January is directory, and the publication thereafter will avoid the penalty. In this case, the object of the statute, to wit, the giving of proper information to the public of the financial condition of the company, seems to have been attained. So, where a majority of the trustees having charge and control of the affairs of the company, a majority of the trustees in office, a majority of the number of trustees assented to by

the board of trustees year after year, and also assented to by the stockholders, signed, filed and published the reports of the financial condition of the company, it is a substantial compliance with the requirements of the statute.

*When unnecessary.*—It is well settled by decisions that the statute of 1848 is penal, and not to be extended by construction ; that, in an action to enforce a liability thereby created, nothing can be presumed against the defendant. Every fact necessary to establish their liability, must be affirmatively proved. Bruce *v.* Platt, *ante ;* Garrison *v.* Howe, *ante ;* Miller *v.* White, *ante ;* Whitney Arms Co. *v.* Barlow, *ante.*

The liability of a trustee does not depend upon the fact that he was such when the debt was contracted, but upon his being a trustee when the default as to filing the report occurred. Bruce *v.* Platt, *ante ;* Garrison *v.* Howe, *ante ;* Boughton *v.* Otis, *ante.*

Where a trustee resigns after the incurring of the debt, but before the default, he is not liable. It is not necessary for him to give notice to the public, or to creditors or any persons other than his associates, of his intention to resign, or of his resignation. Bruce *v.* Platt, *ante.*

The statute requires a company to make a report which shall be published, etc., in the city where the business of a company is carried on. Taken literally, it has no application to a company which is carrying on no business. Taken in any sense, there seems no object in a report from a company whose property has been exhausted by legal process, and which neither is doing nor intending to do any other act in furtherance of the object of its incorporation. Id. Applied to an existing corporation, transacting business, the provisions of this section are beneficial. The report enables persons dealing with such a corporation to determine the credit to which it is entitled ; or, if a present creditor, whether he shall enfore payment or give further time. But none of these considerations can apply to a corporation which is doing no business. Id.

In this case, plaintiffs obtained judgment upon their claim on January 9, 1875. The execution issued for its enforcement was returned unsatisfied before this action was commenced. No business was transacted by the company after the sale by the marshal in December, nor after the 14th of that month. Before January 1, 1875, every person interested in the enterprise as a corporator had abandoned it. The company had but two trustees qualified, or willing to act. It had no property, it was carrying on no business. It had no means of procuring money. It had no stock subscriptions, nor inducements to offer to subscribers. There was no ability or intention to resume business. For every practical purpose, the corporation may, within the principles of a long line of decisions, be deemed to have been dissolved before the arrival of a time when, by statute, a report could be required. See Bradt *v.* Benedict, 17 N. Y. 93 ; Slee *v.* Bloom, 19 John. 456 ; 20 Id. 669; Penniman *v.* Briggs, Hopk. 300 ; Bank of Poughkeepsie *v.* Ibbotson, *ante.*

As there can be no default of the company, so there can be no lia-

bility of the trustees on account of such default. Nor is there, after such dissolution, need of a report. Bruce v. Platt, *ante*. It is required in order that the public may be protected. In Jones v. Barlow, *ante*, the court said that the information is not, by the intent of the act, deemed of use to those who have become creditors of the company so much as to those about to do so.

In Garrison v. Howe, *ante*, the plaintiff claimed that the defendant was liable as a trustee under § 12 of act of 1848, because the company had not, as he alleged, made the report required by that section. It appeared that a report was made in January, 1852. In March, 1852, the company discontinued business, and all its property was sold under execution. This fact was regarded as sufficient to dispense with any subsequent report. In the following cases, this principle was distinctly held. In Huguenot Nat. Bank v. Studwell, 74 N. Y. 621, it was held that on the appointment of a receiver of a manufacturing company, the corporation was so far dissolved, that thereafter the duty no longer rested upon the trustees to make the annual report. In that case, the receiver was appointed during, and before the expiration of, the twenty days named in the statute.

In Losee v. Bullard, 79 N. Y. 404, an action was brought against the trustees of a manufacturing corporation, organized under the act of 1848, to enforce the liability imposed by § 12. The corporation ceased to do business in 1865, and contracted no debts after that time. It suspended its ordinary business and never resumed it. The default was alleged to have occurred after that time. It was held that the corporation was virtually abandoned and broken up, if not technically dissolved, and that the statutory requirements had no application.

In Bonnell v. Griswold, 80 N. Y. 128, the company was adjudged a bankrupt in November, 1870. On January 3, 1871, the entire property passed to an assignee, and the company ceased to do business. In an action against the trustees, it was held that no report was necessary in 1871.

In none of these cases had the corporation been dissolved by proceedings for that purpose. Bradt v. Benedict, *ante*, and Sanborn v. Lefferts, 58 N. Y. 179, illustrate the same principle, and are not exceptions to the rule. In the first case, the stockholder was held not liable under § 7 of the act of 1811; while, in the other, the trustees, under § 12 of the act of 1848, were held liable.

In Bradt v. Benedict, the corporation, although insolvent, still possessed its real estate and machinery, amounting to over $40,000. It was not shown that the stock and materials had been disposed of. There was, therefore, no dissolution of the corporation. In Sanborn v. Lefferts, the corporation was in the same condition. It transacted business after the expiration of the time limited by the statute for the making of the report. The defendant participated in it, and the corporation was possessed of property. It was not dissolved.

On the appointment of a receiver of a manufacturing company, the

corporation is so far dissolved that thereafter the duty rests no longer upon the trustees to make the annual report. Huguenot Nat. Bank *v.* Studwell, 74 N. Y. 621. In this case a receiver was appointed during and before the expiration of the twenty days in which the trustees were required to make such report. It was held that they were not liable to the penalty imposed by § 12, chap. 40 of the act of 1848, for failure to make and file the same.

In Van Amburgh *v.* Baker, 81 N. Y. 46, an action was brought by the plaintiffs as creditors against the defendants as trustees of the Mott Brick Co., to enforce the liability of the defendants, for not making, filing and publishing in January, 1876, the annual report required by § 12 of the act of 1848. The company was organized in February, 1873, The defendants were named, with four others, trustees in the articles of association. They were again elected trustees at the annual meeting of the stockholders in February, 1874, for the year ending February 25, 1875. Before the expiration of that year, the company had become insolvent and discontinued its business. No trustees were elected after February, 1874. The company ceased to do any business after January 15, 1875. On that day, its board of trustees passed a resolution to the effect that it should cease to do business, and resigned their offices to take effect at the end of their terms. None of these defendants acted as trustees after that date. It was held that the defendants were not liable, under such circumstances, for not making the report in January, 1876. See Deming *v.* Puleston, 55 N. Y. 655 ; Reed *v.* Keese, 60 Id. 616. Vincent *v.* Sands, 27 Hun, 511 ; Sanborn *v.* Lefferts, 58 N. Y. 179. The defendants could have continued to act as trustees, under § 4 of the act of 1848, until their successors were elected, and their acts would have bound the company. If they had thus continued to act, they would have been bound to make the report required by § 12 of the act. Van Amburgh *v.* Baker, *ante ;* Craw *v.* Easterly, 54 N. Y. 679 ; Easterly *v.* Barber, 65 Id. 252. But they were not bound to hold over. Unless they chose to act, their offices became vacant at the end of the year. It was not necessary for them to resign at the end of the year, to produce a vacancy. The vacancy would come from the termination of their terms of office. Van Amburgh *v.* Baker, *ante.*

In First Nat. Bank *v.* Lamon, 55 Hun, 414, an action was brought against the defendant, as one of the trustees of the Atlantic Steam Engine Works, to recover a penalty for the failure to file the annual report in January, 1887. The company stopped doing business about the 10th or 15th of December, 1886. Its shop was closed and locked, and the men discharged. From this time no work or business of any kind was done by it or its representatives. On December 29, 1886, an application was made to the attorney-general to bring an action to dissolve the corporation. On January 15, 1887, an action was commenced in the supreme court for this purpose. On January 18, an order was granted to show cause, and in March 17, 1887 an order was entered appointing a receiver of the property of the company, with the usual powers in virtue of these proceedings.

Note on " Liability of Trustees of Manufacturing Corporations."

The proceeding to dissolve the corporation was, in effect, a prohibition against any business transaction or any act on the part of the trustees indicating a continued existence, or an intention to transact any business.

To require the trustees, after its commencement, in order to shield themselves from personal liability, to make a report, is at variance with the whole purpose and design of the statute, and the general principle that the report shall not be necessary, where the corporation has ceased to do business, and is actually dissolved. Id.

In Van Amburgh *v.* Baker, *ante*, the defendants were elected trustees of a manufacturing corporation which, before the expiration of the year, had become insolvent and discontinued its business. They passed a resolution that the corporation should cease to transact business, and resigned their offices, to take effect, at the end of that term, after which they did not act as trustees. The court held that they were not liable as trustees, for the failure to file the annual report.

In Huguenot Nat. Bk. *v.* Studwell, *ante*, it was held that, where a receiver was appointed before the expiration of the twenty days in which the trustees were required to report, they were not liable to the penalty imposed for a failure to make and file the same.

In Bruce *v.* Platt, *ante*, it was held that, when the company had ceased to exist in fact, it was, in a sense, dissolved within the meaning of the act as regards creditors. Under the act of 1848, the obligation of the company to report as to its affairs ceases upon the happening of the same event, viz.: upon dissolution, effected by the same cause, for it then is carrying on no business and is deprived of the means of carrying it on.

In Kirkland *v.* Kille, 99 N. Y. 390, the company was formed in 1874. It incurred no debts after Nov., 1875, and did not do business after that time. Everything that was done by the company, after the middle of January, 1875, was in connection with the foreclosure proceedings that had been taken about that time. After that, all that was done was to foreclose that mortgage and sell out the property of the company. In this case, there was no evidence that any other than formal acts were performed by the company in furtherance of the object of its organization. It was regarded as dissolved; and it was held that, under the circumstance, no report in 1876 was required of the company. It certainly never was in the contemplation of the legislature, and, therefore, not within the intention of the act, that trustees, under such circumstances, would be bound to make a report, when the dissolution of the company was virtually accomplished. First Nat. Bank *v.* Lamon, *ante*.

Where a corporation, organized under the act of 1848, has never in fact commenced business, and, before the time prescribed for making a report has elapsed, the object for which it is formed becomes impossible for it to accomplish, and there is no ability nor intention on its part at any time to prosecute its business, it is not required to make such

report, and its trustees are not liable to creditors, because of its failure to do so. Kirkland *v.* Kille, *ante.*

A technical dissolution of a manufacturing corporation is not necessary to relieve a trustee from the consequences of not filing an annual statement thereafter. It is sufficient if the organization has been practically abandoned. Losse *v.* Bullard, *ante;* Slee *v.* Bloom, *ante;* Huguenot Nat. Bank *v.* Studwell, *ante;* Sanborn *v.* Lefferts, *ante.* In the case first cited, a judgment was obtained against a manufacturing company in 1867. No annual statement was thereafter filed. The company was organized in 1863, with three trustees. No officers were thereafter elected. It ceased to do business in 1865. In 1870, two of the trustees sold out their stock to their co-trustee and never afterwards acted. The third trustee was, from the time of the purchase, the sole stockholder. The only act done by him thereafter was the payment of a debt of the corporation, incurred in 1865. The present action was brought in June, 1875. It was held that the corporation was practically abandoned and that the statutory requirements as to filing a report had no application to it.

The fact that a stockholder of a company was elected a trustee, does not alone invest him with the character of a trustee, so as to charge him with the duties and responsibilities of the office. Cameron *v.* Seaman, 69 N. Y. 396. There must in addition be an acceptance on his part of the office to which he is elected. He is not bound to accept the position. He does not, by becoming a stockholder in the corporation, undertake to act as trustee if elected. Id. But it is not necessary that he should, by a direct and positive act, assent to the action of the stockholders. His acceptance can be shown by conduct on his part indicating an intention to accept the office, and may be inferred from circumstances. Id.

In Carraher *v.* Mulligan, 54 Hun, 638, an action was brought to enforce the liability of trustees under § 12, chap. 40 of 1848, as amended by chap. 510 of 1875. Plaintiff loaned to the corporation $2,000, taking therefor its two promissory notes of $1,000 each, payable three years after date to the plaintiff or order, with interest. No part of said note had been paid. The plaintiff and the defendants, being desirous to relieve the company from its financial difficulties, agreed between themselves, shortly prior to the date of the note, to advance certain moneys to the corporation to be applied to the payment of its debts, on the condition and agreement that the moneys so advanced should only be paid back in the event that the company should thereafter have money or profits arising from its business or property sufficient to pay such advances. In pursuance of such agreement, the plaintiff advanced $2,000, one defendant same amount, and the other two defendants each $1,000. Notes for the amounts so advanced were issued to each party. The notes set forth in the complaint are the ones so issued to plaintiff, and were made on the condition and agreement stated. .

It has been held that, when the condition of the company is such that the end and object for which it is formed are destroyed, and there is neither an ability nor an intention on its part at any time to farther prosecute its

business, it is no longer required to make the report called for by the statute. Kirkland *v.* Kille, 99 N. Y. 395.

If the trustees, knowing that the debts were provided for, and that the claim of the plaintiff as well as their own were not, under the arrangement, debts of the corporation, and, in reliance on this agreement, concluded that there was no necessity for making the statutory report, such default would be one of which the plaintiff could not equitably take advantage. Carraher *v.* Mulligan, *ante.* If the trustees omitted to publish the statutory report by reason of an understanding between the creditor and themselves that it should not be done, the creditor would be estopped from taking advantage of such omission. Id. He cannot claim what is deemed a penalty against the trustees for their not doing what he agreed, expressly or by implication, that they need not do. Id.

In Deming *v.* Puleston, *ante,* an action was brought against a trustee of a corporation to recover a debt due from the company, on the ground that no report was filed as required by the statute. The trustee sought to avoid liability on the ground that his term as trustee had expired when the debt was contracted. He also claimed that the debt was merged in the notes of the company, taken after the expiration of his term, and which were put into judgments. His term had expired, but no new trustees had been elected, and he subsequently acted as trustee. It was held that he was a trustee *de facto,* and, as such, it was incumbent upon him to aid in making the report, and for the failure he was liable; and that such liability was not affected by the creditor's attempt to collect of the corporation.

In Reed *v.* Keese, *ante,* an action was brought against the trustees of a manufacturing corporation, to recover a debt due from the company on the ground of a failure to file the annual report as required by said act. The company was incorporated in 1869. The defendants were named in the certificate as trustees, and continued to be such until after the contracting of the debt in question. The answer admitted the organization of the company, and that defendant was the first trustee. No report was filed until January, 1872. No election of trustees was held. Acts of each of the defendants as trustees prior to August, 1870, were proved, also that they were in the business office and manufacturing establishment of the company at that time, inquiring about the business, and that they signed and verified, as trustees, the annual report of January, 1872. And it was held that the trustees thus holding over were subject to all the liabilities imposed by law upon trustees regularly and annually chosen, Deming *v.* Puliston, *ante ;* Jan *v.* Lefferts, 16 Abb. N. S. 42, and that they were liable for the debts of the company from January, 1870, to January, 1872. Boughton *v.* Otis, *ante ;* Shaler & Hall Q. Co. *v.* Bliss, *ante.*

In Sanborn *v.* Lefferts, *ante,* an action was brought against the trustee for a failure to file a report in January, 1870. The corporate existence of the company began Nov. 10, 1868. Five trustees were appointed in the certificate for the first year. Defendant became a trustee April,

1869, and ceased to act in November, 1869, when his office terminated. In January, 1870, the affairs of the corporation were wound up by a sale of its property and application of the proceeds to the payment of debts. The last meeting of the·trustees was January 28, at which defendant was present. There were no other trustees, but the same persons were acting at that time as those who carried on the business in November, 1869. As late as March, 1870, defendant had a small balance of the company funds in his hands as treasurer. It was held that the fact that a manufacturing corporation, organized under the act of of 1848, has ceased to do business and is engaged in closing up its affairs, is not an excuse for a failure to comply with the requirement of § 12 of said act as to the filing of a report. In the absence of any legal dissolution of the company, these facts do not, nor does knowledge upon the part of a creditor, of the financial condition and embarrassments of the corporation, affect the liability of the trustees to him, imposed by that section. Id.

In Bonnell *v.* Griswold, 80 N. Y. 128, the corporation was adjudged a bankrupt in November, 1870, and on January 3, 1871, its entire property passed into the hands of an assignee in bankruptcy. It was held that no report, subsequent to that of January, 1870, was necessary.

Where a trustee was not legally elected, but was in form elected and acted as such, he is liable for a failure to file a report from the time of his election to the time of his resignation, and the fact that he was not a stockholder is no defense. Halstead *v.* Dodge, *ante ;* Easterly *v.* Barber, *ante.*

In Wamsley *v.* Palmer, Sup. Ct., Nov., 1886, all of the property of the corporation essential to the conduct of the business for which it was organized, was sold under execution. The company have since that date had no property with which to conduct its business. It had not attempted to conduct any, but had substantially abandoned the business of mining. It was held that the trustees of the company were not liable for a failure to file the annual certificate which the law ordinarily requires, while the company remained in the practically defunct condition. The fact of filing a certificate in the subsequent years is a corporate act, but it is not such a corporate act as takes the case out of the principle laid down in Bruce *v.* Platt, *ante.* It is not a corporate act in the direction of the transaction of the business for which the company was organized. Nor is it a corporate act affecting the practical fact of the abandonment of that business. It would be absurd to say that because the trustees performed that technically corporate act at one time, they thereby revived the company's life, and rendered themselves liable to the statutory penalty for not performing a similar act at a future time. Wamsley *v.* Palmer, *ante.*

In Craw *v.* Easterly *ante,* an action was brought against the plaintiff in Easterly *v.* Barber, *ante,* to make him liable to creditors for the same default in filing the report. It appeared, however, in that case that

he had withdrawn from the board before the default took place. The court held that, under the circumstances, he was not bound to continue to act as trustee, and having ceased to act in December, before the omission to file the report and the incurring of the debt to the plaintiff, he was not liable. The court expressly refrained from deciding how far his acts might bind him and the company while he continued to act as trustee.

In Westerfield *v.* Radde, 67 How. 204, the certificate of incorporation was signed by seven trustees and acknowledged by nine trustees. It was duly filed in the office of the secretary of state and the clerk of the city and county of New York, in April, 1872. In May, 1872, one of the trustees resigned, and his resignation was accepted. The annual report of January 20, 1873, required by § 12 of the act of 1848, was made by only two of the trustees, one of whom verified the same as the late acting vice-president of the company.

Nothing less than an official record, showing resignation of trustees, should be allowed to defeat the provisions of a public statute intended to protect the interest of creditors who are without possible knowledge of the directorial acts of the company. The statute requires that the president or secretary shall verify the annual report, which must be signed by the president and a majority of the trustees.

Resignations, if made, should be shown by an official record. Loose statements should not be allowed to supersede the well-recognized principle that the record of a corporation are *prima facie* evidence of its official act, as well as those of its individual members. Id. Otherwise, three or more individuals might organize a company, incur a liability, and then by simply saying "I will resign," or by refusing to take part in any other proceedings, rid themselves of a responsibility which they had voluntarily assumed. This is not the intention of the act in question. The trustees must be held to a knowledge of their liability imposed by the statute, and, if overreached or injured by any act or omission of their associates, must seek redress through the well known channels of the law. Id. But, where the resignation of a trustee is accepted before the liability is incurred, he is not chargeable with any neglect of duty. Id.

In the Meridan Tool Co. *v.* Morgan, 1 Abb. N. C. 125, note, it was held that the omission to file in the secretary of state's office, a duplicate of the certificate of organization, does not avail a trustee as a defense, where there is proof of user. In this case the Meridan Tool Co. sued defendant as administrator, to charge him with the debt of a corporation of which the intestate was a director, and it was held that, by the filing of the certificate in the county clerk's office, immediately followed by user, it became a corporation *de facto*, and the duty to make and publish a report attached. Eaton *v.* Aspinwall, 19 N. Y. 119; Garrison *v.* Howe, *ante.* Any other construction will enable trustees to evade all responsibility by simply omitting to file a duplicate certificate. The trustees are estopped, under such circumstances, from denying the

existence of the corporation.    Meridan Tool Co. v. Morgan, ante ; Squires v. Brown, 22 How. 35.

In Anderson v. Speers, 58 How. 68 ; 8 Abb. N. C. 382; an action was brought by a creditor of a manufacturing corporation against a trustee for a liability imposed by § 15 of the act of 1848, for the filing of a false report.    It was held that the complaint should show that the debt, for which the trustee is sought to be made liable, was contracted while he was a trustee.    Where it is stated in the complaint that the defendant was, on January 13, 1877, and before that date, and subsequent thereto, one of the trustees of the corporation, it is not a statement that the defendant was a trustee in the year 1876.    If the defendant was a trustee a day previous to January 13, 1877, this will satisfy the statement that he was a trustee before that day. Id.

The filing of a false report on successive years gives rise to a separate cause of action as to each year. Id.    The liabilities imposed by the statute upon the trustees for the making of false reports and allowing the indebtedness to exceed the capital stock are in their nature penal. Id.    Jones v. Barlow, 6 J. & S. 142; Wiles v. Suydam, ante.    Each act enters into and becomes a separate cause or ground of action.    Anderson v. Speers, ante.

There can be but one recovery for the debt existing in the plaintiff's favor against the corporation.    But such recovery will be justified by proof of either of the acts done or suffered by the trustees in filing a false report in successive years, or suffering an increase of the indebtedness above the capital stock of the corporation. Id.

In Osborne & C. Co. v. Croome, 14 Hun, 164; aff'd 77 N. Y. 629; it was held that, where it is sought to enforce against one who is claimed to be a trustee of a manufacturing corporation, a personal liability, incurred by the failure of the trustees to file the annual report, it is not enough to show that he was elected a trustee, but some direct and positive act by him, assenting to this action of the stockholders, must be proved.

It seems that, in an action to charge defendant as trustee of a manufacturing corporation, because of failure of the corporation to file an annual report, where it appears that the term of office of defendant expired before the contracting of the debt for which he is sought to be made liable, it is necessary for the creditor to prove that defendant held over and continued to act after the expiration of his term, and this fact is not to be presumed.    Phil. & R. Coal & I. Co. v. Hotchkiss, 82 N. Y. 471.    The only effect of § 4 of the act of 1848 is to make officers actually holding over, and continuing to act, directors de jure until their successors are chosen. Id.    In this case defendant offered to prove that after his term of office had expired and before the debt to plaintiff was contracted by the corporation, he filed his petition in bankruptcy, including in his list of assets his stock in the corporation ; that he was adjudged a bankrupt, assigned and delivered said stock to the assignee and received his discharge ; and that after the filing

of the petition, he had no connection with the corporation. This offer was rejected. It was held that it was error ; that the bankruptcy proceedings were circumstances bearing upon and explaining the fact that defendant had ceased all connection with the corporation, and, therefore, were competent.

"*Debts.*"—§ 12, chap. 40 of 1848 makes no distinction as to the place where such debts shall have been contracted, nor does it distinguish between creditors residing within this or in other states. Sears *v.* Waters, 44 Hun, 101.

In an action against a trustee, based on an alleged neglect to file and publish the annual report, the plaintiff must prove the default, and that the debt was incurred previously thereto. An admission of a neglect to report in a former year is not sufficient evidence thereof. Whitney Arms Co. *v.* Barlow, 9 J. & S. 220.

The statute makes trustees, who are such when a failure to file the report occurs, liable as well for debts then existing as for those afterwards contracted. Carley *v.* Hodges, 19 Hun, 187. In Shaler *v.* H. Q. Co. *v.* Bliss, *ante*, it was said : " Only those who are trustees when the debts are contracted come within these terms." But the point there decided was only that one was not liable for debts contracted after he ceased to be a trustee. The case of Boughton *v.* Otis, 21 N. Y. 261, states that trustees are liable for debts existing while they are in default. Where the failure to file the report occurs after the death of the creditor, the trustees are personally liable to his personal representatives. Carley *v.* Hodges, *ante*.

To charge the trustees with individual liability for a debt of the corporation by reason of the failure to file and publish the annual report required by law, such debt must have been contracted during a default, or have existed at the time of a subsequent default. Garrison *v.* Howe, *ante*. Under a contract between the creditor and the corporation, that the former should deliver and the latter receive and pay for personal property at a future day, a debt does not arise within the meaning of the statute until the delivery of the property. Id.

The words " existing debt " in § 12, chap. 40 of 1848, must have been used in some restrictive sense, or else the statute might operate to subject the trustees to liabilities, which may not be capable of recovery against the corporation itself. If they are to be regarded as existing debts their omission would be fatal to the validity of the report. If the statute is to be strictly construed, the courts are bound to observe the distinction in law between debts and demands, or claims for damages. Victory W. P. Co. *v.* Beecher, *ante*. The courts have held that certain kinds of liability, which must ultimately ripen into debt, are not " debts," within the meaning of the act of 1848, and similar acts. Oviatt *v.* Hughes, 41 Barb. 541; Whitney Arms Co. *v.* Barlow, 68 N. Y. 34. It seems that the " debts," for which the trustees are made liable by the act, do not include unliquidated claims for breaches of contracts and causes of action incidentally arising or resulting therefrom, which the company might meet and defeat by some sufficient defense. Id.

Note on " Liability of Trustees of Manufacturing Corporations."

The liability of trustees is co-extensive and concurrent with that of the corporation. Jones v. Barlow, *ante*. It is subject to the same conditions and qualifications that attach to the original indebtedness. Whatever will defeat or abate an action against the corporation will serve as a shield and defense to the trustees. Id.

If the debt of the corporation is qualified, or payable in the future, it does not become an absolute obligation or a debt payable *in presenti*, when sought to be enforced against the trustees. No penalty attaches for the default, if there is no debt. It is the debt which, under the statute, gives the right of action and which is recovered. Id. If there is no obligation, giving a present right of action against the company, no debt or duty, which may be presently demanded from the corporation, there is no debt or duty which can be demanded under the statute as a penalty against the trustees. The language of the act is quite explicit and imposes the liability for the debts of the company. Id. There is no debt within the meaning of the statute, if the day of payment has not arrived. The object of the statute was to give to the creditors of corporations, founded under it, security for the performance of the obligations and payment of the debts of the company. The creditor gets all the protection designed by the statute, if he has a contemporaneous and concurrent remedy against the defaulting trustees and the company. Id. Though the obligation is wholly statutory and adjudged to be a penalty, it is in substance as in form a remedy for the collection of the corporate debts. The act is penal as against the defaulting trustees, but is remedial in favor of creditors. The liability of defaulting trustees is measured by the obligations of the company. A discharge of the obligations of the company, or a release of the debt, bars the action against the trustees. No action lies for any penalty independent of a debt due by the corporation. A recovery against the trustees and the payment thereof by them discharges the obligation of the company to the creditor, and bars the action at his suit. The remedies against the company and the trustees are concurrent, but there can be but one satisfaction. Id. The penalty is incurred by the default, but the liability to any individual creditor does not become absolute, until a debt shall exist which is within the terms of the statute, and the default in payment has been made by the corporation. Id. For merchandise sold to the corporation, upon an agreed credit, while the trustees are in default for not making the statutory report, an action will not lie against the trustees at once, and before the expiration of the term of credit. In such cases, there would be a liability, but it would be dormant, and not constitute a cause of action until the debt shall become due. Id. If, after the debt should become payable by the corporation, the right to demand payment and the cause of action against the corporation should, by the act and consent of the creditors, be suspended, the liability of the trustees, as the incident of the principal obligation, would also become suspended, *pro tempore* dormant, to be revived by a new default of the corporation. Id. Whatever limitations and conditions attach to the corporate and primary obligation, whether attaching to it at its inception or growing out of subsequent lawful

Note on "Liability of Trustees of Manufacturing Corporations."

agreement of the parties, necessarily qualify the liability of the trustees, which, though final in its character, can only be enforced by reason of the existence of a debt and according to the terms connected with it. Id.

The trustees are not, technically and conventionally, sureties of the corporation. Id. They are not, therefore, discharged from their liability by dealings of the creditor with the primary debtor.

The liability may be collateral to the original undertaking and still not capable of being enforced, except at the time and upon the terms and conditions prescribed by the original and primary obligation. Id. A sufficient reason would exist for not holding the trustees discharged by giving time to the principal, even though the strict relationship of surety existed. The act of extension is the act of the trustees, and, regarding them as sureties, they have assented to it, and are therefore, not discharged. Id. Wright *v.* Storrs, 32 N. Y. 691.

The trustee does not stand in a different position, nor can he avail himself of a defense to the original cause of action, of which the corporation could not take advantage. Whitney Arms Co. *v.* Barlow, 63 N. Y. 62. There may be defenses personal to the trustee, but objections, which go to the foundation of the claim and demand against, and the obligation of, the corporation are not personal to one sued as trustee upon a statutory liability. The debt must be established by evidence competent against the trustee. The facts upon which the debt is founded must be proved. Id. The naked admissions of the coporation, or judgment against the corporation are not evidence against the trustees. They are *res inter alios acta ;* but, when facts are proved which would establish the existence of a debt against the corporation, the liability of the trustees for the debt follows upon the proof of the other fact, upon which the liability is made by statute to depend. A debt necessarily results from the acts of the corporation. And, whether such acts are such as, in themselves, to create or constitute an obligation, or such as will at law estop the corporation from denying its liability, is not important. Id. The trustees are, by the statute, made privies to the acts and doings of the corporation in the transaction of its business resulting in a pecuniary debt or liability. Id. When it is proved that the corporation has received property from others under a promise to pay, under circumstances which the law would adjudge sufficient to charge the corporation for the purchase price, a debt is established which the trustees cannot dispute, although perchance the corporation might, for any reason, have refused to accept the property; and had it done so, no legal liability would have resulted. Id.

In Jones *v.* Barlow, *ante*, the court held that the liability of a trustee, upon the failure of the corporation to make the annual report called for by the statute, was co-extensive and concurrent with that of the corporation, as to the debt which was sought to be fixed upon him. There must be not only an existing debt against the corporation, but a debt presently due, and for the recovery of which an action will lie against the corporation. If the corporation is not suable by reason of a novation or renewal of the debt, no action will lie against the trustee. If a valid debt exists

Note on "Liability of Trustees of Manufacturing Corporations."

against the corporation, to which there is no defense at law or equity in behalf of the corporation, it must be adjudged and held a valid debt, where the trustee is sought to be charged with payment. Whitney Arms Co. *v.* Barlow, *ante.* This necessarily follows as the converse of the decision in Jones *v.* Barlow, *ante.* The first step is taken in establishing the liability of the trustees, where the facts proved would entitle the creditor to a judgment against the corporation for the debt in suit. This establishes the existence of a debt against the corporation; and, upon proof of the other fact, viz.: the trusteeship and default in making the report, the liability of the trustees is proven and judgment must go against him. Whitney Arms Co. *v.* Barlow, *ante.*

The reason of the statute is, to require corporations to make such public showing of their affairs that those dealing with them may be able to determine whether they can safely give them credit. Vernon *v.* Palmer, 62 How. 425. A long line of decisions in this state and elsewhere hold that the statute is a penal one and is to be strictly construed. In order to charge a trustee under this statute, three things must occur in point of time, the trusteeship, the default to publish the report, and contracting of the debt. Id. But the courts of this state hold that a debt within this statute is not contracted until there is an obligation giving a present right of action against the corporation. If there is no such obligation, debt nor duty, which may be presently demanded from the corporation, there is no debt or duty which can be demanded under the statute as a penalty against the trustee. Id.

In this case, defendant was elected a trustee of a manufacturing corporation for the year ending August 6, 1878. He accepted the office, and there has never been a subsequent election of trustees. In January, 1878, the company failed to file its annual report. A receiver of the corporation was appointed Nov. 9, 1878. The corporation gave to the plaintiff its promissory note, due August 10, 1878. The plaintiff sold and delivered to the company certain goods in June, July and August, 1878, on an agreed credit of four months after delivery. The claim thus became due in October, November and December, 1878. This action was brought under the manufacturing act to recover for the same, because of the failure to file its annual report. And it was held that the plaintiff could not recover; that, though the goods were sold at a time when the defendant was a trustee, they were sold on a credit which did not expire until after he ceased to be a trustee.

In First Nat. Bank *v.* Fenton, 23 Hun, 309, a corporation, of which the defendant was the president and a trustee, drew, November 3, 1877, a draft on a firm in New York, payable to his own order, four months after date. This draft was accepted by the drawee and thereafter sold to the plaintiff. The latter presented it at maturity for payment. Notice of non-payment was duly given to the company. The plaintiff thereafter recovered against the company a judgment, upon which an execution was issued and returned wholly unsatisfied. The

company failed to file the report required by § 12 of the act of 1848, between January 1 and 20, 1878, or at any time thereafter. The plaintiff brought this action against the defendant to recover the amount due upon the draft. It was held that, even though the contingent liability of the company upon the draft, prior to its maturity, was not such an indebtedness as would, under the said statute, be recoverable from the trustees, yet, as that liability became an absolute indebtedness upon due notice to the company of the non-payment of a draft by the acceptors, and as the report was then still unfiled, the statute imposed upon the defendant a liability therefor, which the plaintiff could enforce by an action.

In Norris *v.* DeWolf, 12 Hun, 666 ; aff'd 76 N. Y. 597, an action was brought to recover the value of certain bonds issued by the New York and South American Gold Mining Company, from a trustee on the ground that he had become liable therefor, by a failure to file the yearly report. This corporation was organized under the general manufacturing and mining act of 1848. The bonds were given to one Wetmore by the company as a mere gratuity. He subsequently became insane, and the plaintiff was appointed his guardian. It was held that, as the bonds were given to Wetmore by the company, no debt existed against it in his favor, within the meaning of that term, as used in § 12, chap. 40 of 1848, rendering the trustees liable, upon a failure to file the report, for all the debts of the company.

An action against a trustee of a manufacturing corporation, to enforce the personal liability created by the act of 1848, must be founded on the original claim against the company, and not upon a judgment recovered against it. Esmond *v.* Bullard, 16 Hun, 65 ; aff'd 79 N. Y. 404. Such judgment is not even *prima facie* evidence of the existence of the debt, as against a trustee. Id. § 12. chap. 40 of 1848, does not render the trustees liable for torts committed by the corporation. Id. The statute says that the trustees in certain cases shall be liable for all the debts of the company then existing, and for all that shall be contracted, etc. A liability for a tort is not a debt under a statute which is to be construed strictly. It is not contracted, for it does not grow out of contract. Id. The whole object of the statute is to protect persons voluntarily dealing with the corporation and trusting its credit ; but not to protect those injured by mere tort. Id.

In Tyng *v.* Clarke, 9 Hun, 269, an action was brought to charge the defendant, as a trustee of a corporation, for a debt due therefrom, on the ground that no report had been filed, as required by law. The defendant, upon the trial, gave in evidence against plaintiff's objection and exception, a judgment roll in an action by the plaintiff against the corporation to recover the same debt, in which a judgment was rendered for the corporation upon the merits. It was held that the judgment roll was properly received, and that it was conclusive against the plaintiff's right to recover in the action.

In an action, brought to charge the defendants, as trustees of a joint-

17

stock company, organized under and pursuant to the act of 1848, with the debt of the company, because of the omission to make and file an annual report as required by § 12 of that act, the existence of such debt and demand is, of course, essential to plaintiff's right of recovery, and he is bound to establish it by other evidence than that afforded by his judgment. Kraft *v.* Coykendall, 34 Hun, 285. This was decided in Miller *v.* White, *ante.* The trustees are not estopped, by reason of the litigation and adjudication in the creditor's action against the association from disputing or further litigating the claim.

In Miller *v.* White, *ante,* it was held that the judgment, in such a case, was neither conclusive nor *prima facie* evidence of the debt. As against the trustees, there had been no adjudication of any question affecting their immediate right. The judgment as against them did not legally exist. The trustees were neither parties nor privies to the judgment against the company. It is not in the power of the corporation to admit away the trustee's case, or suffer a recovery, which shall be binding upon him and create, as against him, a liability to which he was not previously subject. Kraft *v.* Coykendall, *ante ;* Stephens *v.* Fox, 83 N. Y. 317 ; so in Rorke *v.* Thomas, 56 N. Y. 565, the court remarked that a judgment against the company was neither necessary to the liability of the trustees, nor were they bound by it.

Though the trustees participate in and conduct the defense as trustees, they will not be concluded by the judgment, rendered in the action, in another suit against them personally under the statute. Kraft *v.* Coykendall, *ante ;* Jones *v.* Barlow *ante ;* dis. op. in Tyng *v.* Clark, *ante,* which is now unquestionably well- settled law ; Esmond *v.* Bullard, 15 Hun, 67 ; aff'd 79 N. Y. 404 ; Whitney Arms Co. *v.* Barlow *ante.*

There are cases, where it is held that persons other than parties to the action are concluded by the judgment rendered therein. But these cases are limited, in their application, to instances when such persons had a direct interest in the subject matter of the suit, with the right to make defense, control the proceeding, and to appeal if so advised. But in Kraft *v.* Coykendall, *ante,* the action against the trustees personally was given by the statute. It was an action wholly independent of the action against the company. The judgment against the corporation was not conclusive or binding upon the trustees in the action against them under the statute, as to the existence of the original cause or ground of action ; nor was it conclusive upon them to shut out any defense they might interpose, subsequently arising. Id.

Miller *v.* White, *ante,* is authority for the statement only that a judgment against the corporation is not evidence of the existence of the debt as against the trustees. Jones *v.* Barlow, *ante.* This does not militate against the claim that the debt against the corporation, however it may be proved, must be actually due at the time of the commencement of the action against the trustees. Id.

The trustees are neither parties nor privies to a judgment against the company. Miller *v.* White, *ante.* It is clear that they are not parties. Neither

is there any privity of blood nor of interest. There is a privity of interest, at most, only as to the corporate property. Id. They are strictly neither principal debtors with the company nor sureties. The statute simply imposes a penalty upon them for the omission of a prescribed duty. It compels them to pay the debt of another. Id.

Such judgment is not *prima facie* evidence of the debt as against the trustees. There are many loose expressions to the contrary in the cases. In Moss v. McCollough, 7 Barb. 295, the remark is made that such a judgment is at least *prima facie* evidence. This was said after endeavoring to prove that it was conclusive. But there is no ground whatever for holding such judgment binding upon the trustees, except upon the principle of *res adjudicata*. It is a judgment, and there is no element about a judgment of a *prima facie* character. As a judgment upon the point, it is necessarily absolute and conclusive. A statute sometimes makes it *prima facie* merely. In any other case, it cannot be other than conclusive, if evidence at all. This is the inseparable character and nature of a judgment. It binds all parties and privies, whom it binds at all, upon the ground that the matter has been judicially examined by a competent tribunal and its judgments pronounced thereon. Id.

But in Allen v. Clarke, 43 Hun, 377, it was held that a judgment for costs against a corporation in an action for trespass commenced by it, is not such a debt of the corporation that the trustee is liable therefor, on the ground of the failure to make the report required by § 12 chap. 40 of 1848, as amended by chap. 510 of 1875. The court stated: "The liability expressed is: 'for the debts of the company then existing and for all that shall be contracted before such report shall be made.' These words, 'shall be contracted,' explain the words 'existing debt,' and limit them to such debts as the corporation has contracted. In no accurate sense can the corporation be said to have contracted such judgment for costs, though a judgment is sometimes spoken of as a contract.

"In the case of Miller v. White, *ante*, it was held the judgment against the corporation was not even *prima facie* evidence of the debt against a trustee in an action against him for not filing a report. It was held to be necessary, therefore, to prove the debt by evidence other than the judgment. To do that would be impossible in the case of a judgment for costs. There was no debt prior to the entry of the judgment. No proof could be given, other than the judgment, of any debt of the corporation, because no such debt existed prior to the judgment. The spirit of the statute does not embrace such a case." But this case was reversed on appeal to court of appeals, 108 N. Y. 269. It was there held that a judgment for costs, recovered against a manufacturing company in an action for trespass brought by it, is a debt of the corporation, which can be enforced against a trustee of the company, by reason of its failure to make, publish and file the report required by § 12 chap. 40 of 1848, as amended by chap. 510 of 1875. Such judgment is clearly one of the debts which the company is bound to include among its "existing debts" in the report which it is required to make. The section requires the report to state the amount of all its existing debts

of every nature, and it is the clear meaning of the section that, if such report is not made, the trustees shall be personally liable for all debts which the company was thus bound to report. Id.

The judgment for costs is, in every sense, a debt of the company, which it is under precisely the same obligations to pay as any other debt. It is not a debt existing antecedently to the judgment, but it is a debt created by the judgment itself. As it is a debt against the corporation, which it is bound to pay, it can be enforced against the trustees. Id.

The judgment, it may be, is not conclusive as against the trustee, and it is undoubtedly open to him to show that the recovery is either collusive or fraudulent. But it is a debt created by the judgment itself. It is proved by the production of the judgment, and that is at least *prima facie* evidence of its existence. Id. It is unlike the case of Miller *v*. White, *ante*, where the judgment was upon a debt antecedently existing. In such case, it was held that the judgment was neither conclusive nor *prima facie* evidence of the debt, and that it was the duty of the plaintiff to prove and establish its debt independently of the judgment. The reason upon which that decision is based, can have no application to a case where there is no liability on the part of the company to pay the costs antecedently to, nor independently of, the judgment. Allen *v*. Clark, *ante*.

The words " and for all that shall be contracted before such report shall be made," do not limit the meaning of the word "debts of the company then existing," to such debts of a corporation as are voluntarily contracted. Id. The word "contracted" here means the same as "incurred" and includes every debt for which the corporation becomes bound. There is no apparent reason for any discrimination as to the kind of debts and none was intended. Id.

A judgment of record against a corporation, organized under the manufacturing acts, is a debt, " then existing," for which the trustees are liable, through a neglect to make and file an annual report under § 12 of the act of 1848. Lewis *v*. Armstrong, 8 Abb. N. C. 385.

In Miller *v*. White, *ante*, at the time the cause of action arose through the omission to file the report, the judgment against the corporation was not in existence. It was not, in fact, recovered until eighteen months thereafter. There was no evidence of any default in making reports after the recovery of the judgment. The liability, to which the trustee was exposed in that case, when the default in making the report occurred, was an open contract debt, existing against the corporation. The existence of such indebtedness was sought to be established, on the trial, by the record of a judgment afterwards recovered. In the court below, such record was held to be conclusive evidence of such indebtedness. But the court of appeals reversed the judgment, and held that it was neither conclusive nor even *prima facie* evidence of the fact of indebtedness at the time the default arose. But in the case of Lewis *v*. Armstrong, *ante*, when the default arose the creditor's original claim was merged in his judgment against the corporation, which was the only debt he had against it. Had it at that time existed in open account, which was subsequently put in judgment, the case

would be like Miller *v.* White, *ante.* As this is a penal statute, it is strictly construed, and, when the trustees are declared to be personally liable for the debt "then existing," the quality of the debt, as it then stood, including its consideration, is a substantial matter.

It has been held in some cases that the original claim is not merged in a judgment against the corporation. Such conclusion has been reached in cases where the creditor, after a default by the company to make and file the annual report, has prosecuted the corporation or taken its notes for the original demand. In such cases, it has been held that the original claim, to which the trustee was exposed when the default occurred, was not so merged in the judgment or notes, as that the creditor could not enforce his claim against the trustee for its amount. Deming *v.* Puleston, 3 J. & S. 309; 55 N. Y. 655. The creditor's claim against the trustee, in such case, is limited by the character of the debt when the default arose.

But, if, for any reason, the judgment is not an existing debt against the corporation, or, if it was fraudulently obtained, the matter should be set up by way of answer to the complaint. Lewis *v.* Armstrong, *ante.* That such inquiry can be had in such action, the case of Miller *v.* White, *ante,* clearly enough shows. See also McMahon *v.* Macy, 51 N. Y. 155; Hastings *v.* Drew, 76 Id. 9.

A judgment, which was in existence as a debt of the corporation at the time the default, of which complaint is made, happened, and has been so standing unchallenged for several years, is a debt within the meaning of the statute, for which the trustee in default is responsible. Lewis *v.* Armstrong, *ante.*

" *Creditors.*"—Where, after a trustee has become personally liable to pay a debt, by reason of a failure to file a proper report, such debt is assigned, the assignee thereof may maintain an action to enforce such personal liability. Pier *v.* George, 14 Hun, 568.

In Merchants' Bank *v.* Bliss, *ante,* the court of appeals held that the action against trustees, under this statute, must be considered an action upon a statute for a penalty or forfeiture; and that the three years' statute of limitation was applicable for that reason. In the case of the Bank of California *v.* Collins, 5 Hun, 209, it was held that the action for failure to file report is penal in its character, and does not survive against the executors of a deceased trustee.

But whatever doubt is created by these cases, respecting the assignability of a cause of action against a trustee arising from the failure to file a report, must be held to be overcome by the case of Bolen *v.* Crosby, *ante.* In this case, it was held that the assignment of a judgment against a corporation, organized under these laws, carries with it the claim or debt upon which it is founded, and all rights and remedies for the recovery and collection, of the debt or claim, including the remedy given by the act against the trustees.

An action cannot be maintained upon a demand by an assignee thereof against a trustee of a mining company for failure to file the annual report, where it belonged, at the time of the failure to file such report, to the

president of the company, who is, of course, one of its trustees. Bronson *v.* Dimock, 4 Hun, 614. The case of Briggs *v.* Easterly, 62 Barb. 51, decided the precise point and holds that such an action cannot be maintained. Though such claims may be within the letter of the act, yet, not being within the mischief intended to be prevented or remedied by it, nor within its spirit and intentions, they are not within its provisions. One trustee cannot be made liable for the demands of his co-trustees against the corporation, on account of the failure of the trustees to file the annual report. Where both are equally at fault, the condition of the defendant is preferable. Bronson *v.* Dimock, *ante.* The case of Bolen *v.* Crosby, 49 N. Y. 183, holds that such an action can be maintained by the assignee of a secretary of a corporation. The decision of this case seems to have been placed upon the ground that the secretary of the company was but its servant, performing such duties as were incident to his office. Though, under the direction of the trustees, he might prepare the paper and verify it, he could not in any way make it the act of the corporation and a compliance with the statute so as to relieve the trustees from their liability. He was not in duty bound to make the report, and he was not in fault because it had not been made. In Bronson *v.* Dimock, *ante,* as in the case of Briggs *v.* Easterly, *ante,* the assignor of the claim was a trustee. Upon him had devolved the duty of seeing that the annual report was filed. The cause of action, if any, arose partly through his own neglect to perform a duty which then devolved upon him. The president of these corporations must be selected from the number of its trustees. The case of Bolen *v.* Crosby, *ante,* is distinguishable from the case of Briggs *v.* Easterly, and of Bronson *v.* Dimock, *ante.* If the complaint shows that the assignor of the cause of action has ceased to be a trustee or president before the failure to file the annual report, the reasoning of the last two cited cases will not apply.

In Bolen *v.* Crosby, *ante,* one Weymouth, on July 1, 1865, became the secretary of the New York and Pennsylvania Petroleum, Mining and Manufacturing Company, a corporation organized under the general law of the state of New York. For his services as secretary, he recovered, on March 5, 1868, a judgment against the company for $3,765.79. He assigned on May 2, 1868, his judgment against the company to plaintiff. The latter brought an action to recover the amount of such judgment of the defendants, who were trustees of the company, under § 12, chap. 40 of 1848. The defendants, by their answer, admitted that they were trustees of the corporation and made default in making, publishing and filing the report required by said section. But they alleged, by way of defense, that the omission to make and file the report was the willful and fraudulent neglect of the plaintiff's assignor, who was the secretary of the company and charged with this duty. And they further alleged, by the supplemental answer, that the plaintiff had accepted $600 from one of the defendants in full satisfaction and accord of all claims against such defendant The failure of the trustees to make the report was not in any way caused by or attributable to plaintiff's assignor.

Note on "Liability of Trustees of Manufacturing Corporations."

The act imposes the duty upon the corporation of making the report and requires it to be signed by the president and a majority of the trustees, and to be verified by the oath of the president or secretary. Upon its default in making the report for more than twenty days after the first day of January, in any year, the trustees are made jointly and severally liable for all the debts of the company then existing, or that shall be contracted before such report shall be made. The report is to be the act of the trustees, and the duty of making it is devolved upon them. The secretary is but the servant of the company, performing such acts and rendering such services as are incident to the office or may be specially imposed. He might, under the direction of the trustees, prepare the paper and verify it by his oath in the place of the president. But he could not subscribe to it the names of the trustees, or verify it in any way to make it the act of the corporation and a compliance with the statute, so as to relieve the trustees from their duty, or the liability resulting from an omission to perform it. Id.

An assignment of a judgment against a corporation organized under this act carries with it the claim or debt upon which it was founded, and all rights and remedies for the recovery and collection of such claim or debt, including the remedy given by the act against the trustees. Id.

In the absence of any discrimination in the statute itself between stock-holding and other creditors, there is no ground upon which such a distinction can be made. The statute makes it the duty of the company to file and publish the statement, but this duty is to be performed by the president and trustees, and not by the stockholders. Bolen v. Crosby, ante. The stockholders are not subjected to any liability for its non-performance. In such case, the reasons which induced the court, in Baily v. Banker, 3 Hill, 191, and subsequent cases, to hold that one stockholder cannot maintain a common law action against another stockholder to recover a debt for which all the stockholders are liable, do not apply. Sanborn v. Lefferts, ante. A stockholder may be a creditor of the company of which he is a member, and may maintain an action at common law for the recovery of its claim. Willoughby v. Comstock, 3 Hill, 389. No ground exists upon which the withholding from him of any remedy against the trustees to which other creditors are entitled, can be justified. Id.

An assignee of a claim against a manufacturing corporation may maintain an action against the trustees thereof, to enforce the liability for its debts given by the general manufacturing act, because of failure to file an annual report, or because of signing a false report. Pier v. George, 86 N. Y. 613 ; rev'g S. C. 20 Hun, 210; Bolen v. Crosby, ante ; Hoag v. Lamont, ante.

It seems that, where a manufacturing corporation is indebted to a firm, one member of which is a trustee of the corporation, neither the members of the firm jointly, nor the other members to whom the trustee has transferred his interest, can maintain an action against another trustee under § 12, chap. 40 of 1848, on failure to file an annual report. Knox v. Baldwin, ante. The creditor trustee, being equally with the other trustees charged with the duty of seeing that the annual report is made,

and so chargeable with the default, cannot alone, or in connection with his associates, nor can his assignees, pursue a remedy which, if enforced, would enable him to profit by his own wrong or negligence. Id.

When a debt against a corporation, owned by a trustee, is assigned by him absolutely for value, the assignee, on a default by the company, subsequently occurring, to make a report, may proceed under § 12 of the act of 1848, though the assignor continued to be a trustee up to the time of the default. Cornell *v.* Roach, *ante.*

The sections provide for a liability of trustees or officers of a company, for all debts existing or contracted, without limiting or restricting such liability, to the creditor alone, and extend the remedy for the collection of the debt, against the trustees or officers who neglect their duty and fail to comply with the law. Bonnell *v,* Wheeler, 1 Hun, 332. They do not change the nature of the debt, for which the company was originally, and continues to be, liable, nor invests it with a character which prevents an assignment of the same, which carries with it all the incidental remedies given by the statute. 2d. The act embraces " all the debts of the company." This means debts due, not only to the original creditor, but to such person as may be entitled to the same by virtue of the lawful assignment. Id.

The language of § 12, chap. 40 of 1848, is broad enough to include the debt, of individual trustees against the corporation, and the question arises whether such debts are within the provision of the act. It was no part of the design of the statute to enable trustees, by means of their own wrong and neglect of duty, to create a personal liability against their fellow trustees, in respect to their own claims and demands against the corporation. Briggs *v.* Easterly, *ante.* Notwithstanding the general language of the act, the fundamental rule, which lies at the very foundation of all law, that no person, by his own transgression, can create a cause of action in his own favor against another, must be applied to trustees of such corporation. Id. The personal liability is imposed by way of punishment for the violation solely, and, if the wrongdoer himself is to share in the benefit resulting from the wrong, it is easy to see to what intolerable mischief and oppression the provision may lead. Though the claim of the trustee may be within the letter of the act, yet, not being within the mischief intended to be remedied or presented by it, nor within its spirit and intention, it is not within its provision. Id. It can make no difference, in such case, that the co-trustee is equally in fault. In that position, he can depend upon the maxim, that where both are equally in fault, the condition of the defendant is preferable. Id. Chap. 40 of 1848 is held to be punitive in its nature. Its severe penalties are inflicted on grounds of public policy for the protection of creditors and the prevention of fraud upon the public in respect to the financial condition of the corporation. Easterly *v.* Barter, *ante.* The liability of the trustees has no relation to the actual loss or in, jury sustained by the party in whose favor the action is given. It has been held accordingly that the action fell within that section of the Code which provides a limitation as to the time of bringing an action where a " penalty

Note on " Liability of Trustees of Manufacturing Corporations."

is given to the party aggrieved." These reasons cannot apply in favor of a trustee who is at the same time a creditor. Id. If the report is not filed, he must be deemed to participate in the default. He cannot have a cause of action against his associates based on his own wrong or default, nor is there any rule of public policy to be invoked in his favor. He cannot, at the same moment, subject himself to a penalty for delinquency in his character of trustee and invoke the policy of the law in his favor as a creditor to cast the burden of the penalty upon his associates. Id. Briggs *v.* Easterly, *ante.*

A person having voluntarily assumed the character of trustee, shall not be permitted to deny either as to his co-trustees or to the *cestuis que* trust that he held that character, or to disavow his acts done in that capacity. Easterly *v.* Barber, *ante.* Accordingly, the failure to file the report in such case is the constructive trustee's failure as well as that of his associates. They could only be held liable with him to a creditor who had been aggrieved by their conduct. Id. If he is a constructive trustee for one purpose he is for all matters connected with the due and faithful administration of the trust. Id.

The right of a pledgee of corporation bonds to secure a loan to said company is not precisely the same as that of an owner, where the pledgor is also one of the trustees, and liable with the others for not making the reports. Roach *v.* Duckworth, *ante.* The pledgor in such case cannot sue any of his co-trustees for failure to make the report. The pledgee can enforce the debt against the trustees only so far as is necessary for his indemnity. If he should go further, it would be for the benefit of the pledgor, and could not be allowed. Id. The pledgee can sue upon the bonds in his own name and recover judgment. If that is paid, it, as to him, ends the liability of the trustees, because his debt is then satisfied. But, if he fails to collect or obtain payment of such judgment, he can then sue any or all of the trustees to enforce their liability for his debt, and the recovery in the former action is no bar to the recovery in the latter. Id. If he thus obtains two judgments, he can only recover upon either or both the amount due him for his claim and the cost. He can commence both actions at the same time, and the only way to prevent his recovery in both is for one or more of the trustees to tender him the amount due and costs. So his rights as pledgee are precisely the same as they would have been as owner, except that as pledgee he can enforce payment only of the amount due him for his claim. Id.

*Other penalties.*—§ 13, chap. 40 of 1848, provides that, if the trustee shall declare and pay any dividend, . . . . the payment of which would render it insolvent, or which would diminish the amount of its capital stock, they shall be jointly and severally liable for all the debts of the company then existing, and for all that shall be thereafter contracted, while they shall respectively continue in office.

This section seeks to deter the trustee from despoiling the company to the profit of the stockholder and to the ruin of the creditors. Patterson *v.* Robinson, 37 Hun, 341. Such a wrong has no connection with the con-

tracting of the debt, but it imperils its payment, and the liability affixed upon the offending trustee may well be called a penalty. Id.

Unlike §§ 12, 13 and 15 of chap. 40 of 1848, § 23 commands nothing and forbids nothing, and therefore affixes no forfeiture as the penalty for the commission of what is forbidden, or for the omission of what is commanded. Id. It does not forbid the company from creating further debts when those already created equal in amount the capital stock. It rather permits such excessive creation. But, to secure payment to the creditors who become such after the limit of the capital stock is exceeded, it adds the personal and individual liability of the trustees assenting to such excess to the liability of the company. Where the excess of indebtedness over the amount of the capital stock exists, and the trustees then create further excess of indebtedness, their personal liability seems to attach *eo instanti* the debt is created. Id. Otherwise it must be held that it was the exclusive debt of the corporation in the first instance, and then, for some subsequent offense of the assenting trustee, he became condemned by the statute to pay it. But there is no such subsequent offense expressed in the section. The nature of the case does not admit of it, unless such subsequent assent is the assent contemplated by the section, a view which cannot be entertained. Where the assent and the creation of the excessive debt concur, the corporation and the assenting trustee severally bind themselves by the contract creating it. Id. The statute extends the personal liability of the trustee to the creditor. The published annual reports have advised him ,that the debts of the company have already reached the amount where the personal liability of the trustee must attach if more debts are created, and it does not appear that he would not have trusted the company except for the security the statute extended to him. The assenting trustee is perhaps quite willing to add his personal liability to that of the company. To him the affairs of the company may promise success if its business can be continued, and he knows it can be upon a condition which he accepts.

§ 23 provides one of the means contemplated by § 2, art. 8 of the Constitution, which requires that "dues from corporations shall be secured by such individual liability of the corporators and other means as may be prescribed by law."

In Wiles *v.* Suydam, 64 N. Y. 173, the complaint united a cause of action under § 10 with the cause of action under § 12. of this act. The court held that the two causes of action were improperly united, because the cause of action under § 10 was for a contract liability, and § 12 imposed a penalty.

In Corning *v.* McCollough, 1 N. Y. 47, it was held that the contract of the company bound the stockholders at the same time it bound it; and the cause of action was held to be upon contract and not upon a penalty. In Story *v.* Furman, 25 N. Y. 223, the statute liability was held to be part of the obligation of the contract. If, therefore, the assenting trustee becomes bound by the contract whereby the excessive debt is created, he becomes bound to the creditor, and cannot be discharged without the creditor's consent. The liability incurred under § 10 may be an exception to this rule. The section expressly says that the liability shall exist until the capital

stock is paid in and a certificate thereof recorded. Veeder *v.* Mudgett, 95 N. Y. 295. But no such temporary liability is contemplated by § 23.

Where a trustee does not assent to the creation of an indebtedness exceeding the capital stock of the company, his subsequent failure to dissent, when informed of the fact, is not equivalent to the assent required by the act. Patterson *v.* Robinson, *ante.*

In the last cited case, two of the defendants were trustees of the company during the time in which it incurred the excessive indebtedness. But it was not shown that they ever attended any meeting of the trustees, or were consulted with reference to the management of its business, or participated in its affairs, except to sign its annual report, and then only upon their faith in the assertions of a co-trustee that they were correct. It was held that no such assent on their part was shown as was required to make them liable under the act of 1848.

§ 23, chap. 40 of 1848, provides "that if the indebtedness of any company, incorporated thereunder shall at any time exceed the amount of its capital stock, the trustees of such company assenting thereto shall be personally and individually liable for such excess to the creditors of such company." The liability of the assenting trustee under said section is a contract and not a penal liability. McComb *v.* Kellogg, 48 Hun, 621 ; Patterson *v.* Robinson, *ante ;* 37 Id. 341.

§ 23, chap. 40 of 1848 reads as follows : " If the indebtedness of any such company shall at any time exceed the amount of its capital stock, the trustees of such company assenting thereto shall be personally and individually liable for such excess to the creditors of the company." As this excess of indebtedness is due by the contract of the company, and without regard to the statute, indeed wholly independent of the statute, to the creditor to whom the contract of the company made it due, no statute can deprive such creditor of the benefit of his contract engagement with the company. When the statute steps in, and adds to the contract liability of the company for such excess of indebtedness, the personal and individual liability of the trustees, assenting thereto, it adds to the liability of the company where that liability was placed, namely, to the creditors to whom the company was liable for it. Patterson *v.* Robinson, 37 Hun, 341. There is no language in the statute at variance with such a construction, certainly none which seems to imply that the liability of the assenting trustees for such excess of indebtedness shall be diverted from the creditors to whom the company owe such excess, and be donated to, or conferred upon, or shared among, the creditors to whom the company does not owe it. Id. § 23, unlike some other sections of the act, does not impose this personal liability as a penalty for wrong done or duty omitted, but as the terms upon which such excess of indebtedness may, with safety to the creditors, be permitted to the company. Id.

In Hornor *v.* Henning, *ante,* the statute under which the action arose was practically indentical with § 23 of this act. The complaint recited that Washington City Saving Bank had incurred an indebtedness of $850,000, in excess of its capital stock, to which excess the defendants, its trustees, had

assented; that the bank owed the plaintiff $4,000, and by virtue of the statute a cause of action therefor had accrued to him. The plaintiff did not allege that any of the excess of indebtedness had been contracted with him by the bank. The trustees demurred to the complaint. The court sustained the demurrer. By this statute it was intended that, so far as this excess of indebtedness over capital stock was necessary, the trustees who had assented to it should make good the debts of the creditors who had suffered by their breach of trust. This liability constitutes a fund for the benefit of all the creditors who are entitled to share in it in proportion to the amount of their debts, so far as it would be required to pay them. In that aspect of the case, an equity action for the benefit of all would be the proper remedy. But the point was not presented nor considered whether the remedy was given to the creditor to whom the bank had created the debt, after its indebtedness exceeded its capital stock.

In Anderson *v.* Speers, *ante*, the action was brought by a creditor, but not a creditor to whom the company had contracted the excess. The defendant demurred because of a defect of parties, in that the other creditors were not joined. The court, following Hornor *v.* Henning, *ante*, and Merchants' Bank *v.* Stevenson, *ante*, sustained the demurrer. But these cases could not be considered as authoritative against the claim of a creditor to whom the company contracted the excess of indebtedness in the absence of the consideration by either court of such claim. See Weeks *v.* Love, 50 N. Y. 568.

The liability of the assenting trustee is a contract and not a penal liability. The assenting trustee, knowing that the indebtedness of the company has reached at least an amount equal to the capital stock, concurs with company in contracting further indebtedness. Patterson *v.* Robinson, *ante*. He knows that the statute, in case he assents, makes him also liable. He gives his consent, and thereby under the statute pledges his liability. Id. Such construction may lead to reckless speculation, but speculation is no offense. The statute prudently tempers the venture for gain by making the assenting trustee a partner with the company in the risk of loss, or more accurately, in liability to such creditors. The creditor for the excess cannot be deprived of his recourse to the assenting trustee by any decrease in the aggregate indebtedness of the company, or otherwise than his own consent or by payment to him. Id.

To constitute a liability on the part of the trustee of a corporation, under § 35 of the general manufacturing act, for a failure to make and publish a report, it is essential to aver, in pleading, that the debt for which he is sought to be made liable was existing at the time the default was made, or that it was contracted afterwards and before the report was published. Chambers *v.* Lewis, *ante.*

To render a trustee liable, under § 46 of the general manufacturing act, on the ground that he had assented to an increase of the company's indebtedness beyond the amount of its capital, the party seeking to fix a personal liability upon him must allege, in pleading, that such excess of indebtedness

was equal to, or exceeded, the amount of his debt. It is not sufficient to allege that such excess exceeds the amount of the capital. Id.

§ 13 of the act of 1848 provides as follows : " If the trustees of any such company is insolvent, or any dividend the payment of which would render it insolvent, or which would diminish the amount of its capital stock, they shall be jointly and severally liable for all the debts of the company then existing, and for all that shall be thereafter contracted while they shall respectively continue in office ; provided that if any of the trustees shall object to the declaring of such dividend or to the payment of the same, and shall, at any time before the time fixed for the payment thereof, file a certificate of their objections in writing with the clerk of the company and with the clerk of the county, they shall be exempt from the said liability."

In the Excelsior P. Co. v. Embury, 67 Barb. 261 ; aff'd 63 N. Y. 422, the defendants, who were trustees of a manufacturing company organized under the act of 1848, and the act amending the same, were charged with the violation of § 2, chap. 18, title 4, Part 1 R. S., and having paid dividends, not from the surplus profits of the company, but by withdrawing and dividing a part of the capital stock without the consent of the legislature. It was held that the two statutes were repugnant to, and in conflict with, each other ; and that it was not the meaning or object of the law makers to apply both statutes to trustees of a corporation created under the act of 1848. The legislature designed to provide, by the act of 1848 for the cases in which individual liability should result from the acts therein prohibited. An action cannot, therefore, be maintained against such trustees under the provision of the Revised Statutes. Id. To relieve trustees from personal liability, they must not only make and publish their annual report, but it must be actually filed. Gildersleeve v. Dixon, 6 Daly, 76.

The provisions of the general act providing for the incorporation of manufacturing and other corporations, forbidding the declaring and paying a dividend by the trustees of a corporation organized under it which shall diminish its capital stock, and imposing a penalty for the violation of said provision, takes the cases of such corporation out of the rule of the Revised Statutes upon that subject, and, as to them, prescribes the only penalty recoverable for such violation, and the only persons who may sue therefor. Excelsior P. Co. v. Lacey, ante. The legislature did not intend, in the passage of the act of 1848, to make another additional penalty, and to give it to a different person, and to require dissenting trustees to take both methods or not escape. Id. The former rule of the Revised Statutes though it might remain for the guidance of corporations existing under them, is confined in its operation to them. Id.

A corporation may maintain an action at common law, without the aid of statute, against the directors or trustees of it, for acts injuriously affecting its interest. Id. An action on the case will lie for such an act, if wrongful. Frank. Ins. Co. v. Jenkins, 3 Wend. 130. A court of equity will interpose, if trustees have been guilty of willful abuse of the trust, or misapplication of the funds by which loss has come, or if waste or loss has

been suffered by gross negligence and inattention to duties. Robinson *v.* Smith, 3 Paige, 233. But an action at common law cannot be maintained by the corporation, where the trustees acted in good faith, and no question of negligence is raised. Excelsior P. Co. *v.* Lacey, *ante.*

In Victory W. P. Co. *v.* Beecher, 97 N. Y. 651, an action was brought against the trustees of a manufacturing company to recover a claim against the company, because of an alleged failure on the part of the trustees to make and file an annual report. A year after the organization of the corporation had not elapsed when such failure occurred. § 12 of the act of 1848 was repealed and superseded by chap. 510 of 1875. This action was commenced subsequent to the repeal, to enforce a penalty under that section. And it was held that the right of action fell with the repeal. See also Norris *v.* Crocker, 13 How. U. S. 429 ; Butler *v.* Palmer, *ante ;* Curtis *v.* Leavitt, 15 N. Y. 9, 229 ; Sturgis *v.* Spofford, 45 Id. 446 ; Knox *v.* Baldwin, *ante ;* Merchants' Bank *v.* Bliss, *ante ;* Jones *v.* Barlow, *ante ;* Whitney Arms Co. *v.* Barlow, *ante ;* Wiles *v.* Suydam, *ante ;* Bruce *v.* Platt, *ante ;* Easterly *v.* Barber, *ante ;* Veeder *v.* Baker, 83 Id. 156 ; Pier *v.* George, *ante ;* Roach *v.* Duckworth, *ante ;* Stokes *v.* Stickney, *ante.*

*Limitations.*—In Cornell *v.* Roach, 9 Abb. N. C. 275, it was held that, if the trustees of a manufacturing corporation fail, during successive years, to file the annual report required by statute, the right of action is barred by the statute of limitations, when three years have elapsed since the first default, and the continuance of the default does not create a new liability. It is not necessary, in order to render this rule applicable, that it appear expressly from the pleading that the same persons were, if enough is stated to raise an implication that they were, trustees during the several years. Id.

The statute requires that the action shall be brought within three years from the time the cause of action accrues. Losee *v.* Bullard, 79 N. Y. 404. The action is for a statutory penalty. This penalty, if it ever is incurred, is completely incurred at the time of omission to file the report. The continuance of the default in successive years does not have the effect of renewing the liability of the trustees, as does a new promise or a payment on account, in case of a liability founded on contract. The remarks of the court in Boughton *v.* Otis, 21 N. Y. 264, are not applicable to such a case. They relate to the liability of successive trustees for the same debts, not of the same trustee for the same debt by reason of successive defaults. They do not affect the question whether, when a trustee has once become liable for a particular debt, the statute of limitations begins to run in his favor from that time as to that debt, notwithstanding that the default will be continued during successive years.

The Merchants' Bank of New Haven *v.* Bliss, *ante* applied the short statute of limitations, prescribed to actions for penalties by § 92 of the former Code, to this class of actions. But this case does not purport to define who are "creditors" authorized to sue, or from what time the statute begins to run. It can only commence to run from the time the cause of action accrued. It does not begin to run from the time of the

Note on " Liability of Trustees of Manufacturing Corporations."

default in making the report, else, upon a continued default of three years or more, no action would lie against the trustees for debts contracted after that time. Jones *v.* Barlow, *ante.*

§§ 12 and 13, chap. 40 of 1848, impose a penalty, or a disability in that nature, to which the shorter limitation of three years applies. Merchants' Bank *v.* Bliss, *ante.*

When, under the provision of the Code, limiting the time for bringing an action to recover a penalty to three years, an action is brought against a trustee of a manufacturing corporation, to charge him with the debt because of failure of the corporation to file an annual report more than three years after January 20, of the year when the alleged failure occurred, the action is barred. Knox *v.* Baldwin, *ante.* On that day, if at all, the cause of action under this section accrued against the defendant as trustee. Id.; Miller *v.* White, *ante ;* Merchants' Bank *v.* Bliss, *ante ;* Wiles *v.* Suydam, *ante.*

*Other matters.*—In an action against the trustees of a manufacturing corporation, organized under the general law, to charge them with the debt of the corporation because of a failure to file the annual report, the declaration of the president of the corporation in a matter affecting its business, and in respect to which he is acting for it, are competent to prove its indebtedness. Hoag *v.* Lamont, *ante.*

Where the complaint, in an action to charge a trustee for a failure to file and publish the statement required by the said statute, sets out a copy of the report as filed and published, and alleges that it does not comply with the statute, the particular defects therein need not be set forth in the complaint. Glenns Falls Paper Co. *v.* White, *ante.*

A complaint in an action against two out of three trustees of a manufacturing corporation, for a failure to file the annual report, is not demurrable on the ground of a defect of parties defendant. Potsford *v.* Dodge, 65 How. 145.

An allegation that the corporation is duly organized and existing, does not allege the existence of any number of trustees, though the statute requires three or more. Id.

A compulsory reference cannot be ordered of an action to charge a trustee of a manufacturing corporation with a debt of the corporation, by reason of omission to file the annual report, though the only issue is as to the indebtedness of the company on a long account. Hyatt *v.* Roach, 1 Abb. N. C. 125. Such action is not upon contract, but is brought to enforce a penal obligation of the defendant, under the statute, in his capacity as trustee. Id.

The Code provides that the verification of an answer may be omitted, where the party pleading would be privileged from testifying as a witness concerning an allegation or denial contained in the pleadings. See § 523. § 837 declares that a witness will not be required to give an answer which shall tend to expose him to a penalty or forfeit. An action, brought against a trustee to recover a debt due by a manufacturing corporation on the ground that he failed to make the annual report required by the

Note on "*Liability of Trustees of Manufacturing Corporations.*"

general manufacturing law, is not to recover a debt which he owes, but to impose upon him, as a penalty for his default, the payment of the debt of the corporation. Gadsden *v.* Woodward, 103 N. Y. 242. Such an action is an action for a penalty or forfeiture. Any admission which he might make in his answer, in support of the plaintiff's allegation, would, therefore, necessarily tend to expose him to a penalty. Id. ; Merchants' Bank *v.* Bliss, *ante ;* Veeder *v.* Baker, *ante ;* Stokes *v.* Stickney, *ante.* Such trustee is not, therefore, in such action, required to verify his answer under § 523 of Code, read in connection with § 837, though the complaint is verified, as his admission therein would tend to expose him to a penalty. Gadsden *v.* Woodward, *ante.*